313 So.2d 663 (1975)
Virgil EVANS, Petitioner,
v.
FOOD FAIR STORES, INC., et al., Respondents.
No. 45278.
Supreme Court of Florida.
February 19, 1975.
William F. Daniel of Cotten, Shivers, Gwynn & Daniel, Tallahassee, and Anthony Capodilupo Law Offices, Miami, for petitioner.
Guy M. Junger of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for respondents.
ERVIN (Retired), Justice.
By petition for writ of certiorari we have for review an order of the Industrial Relations Commission reversing a compensation order of the Judge of Industrial Claims. We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
Claimant, Virgil Evans, was injured in respondent's parking lot while helping a fellow employee, Terry Givens, start his car. Claimant had placed his car head to head with Givens' car and was standing between the cars when, after being started, Givens' car moved forward striking claimant. In awarding compensation the Judge found, inter alia, as follows:
"... [T]his injury must be considered to be within the course and scope of employment. It was on the premises of the employer. The claimant was helping a fellow employee at the time. It was clearly established that it was common practice for one employee to help another start their [sic] cars in the employer's parking lot. In addition, *664 claimant has testified that on several occasions he has done automobile repair work on the automobiles of his fellow employees. Specifically he stated that he has done air conditioning repairs to the automobile of one David Lazar and one Jim Kelly. In addition, Mr. Evans stated that extensive repair work was done on employer's premises to an automobile owned by one John Banza. In addition, Earl Putman [Putnal], claimant's immediate supervisor at the time, has stated that automobile repair work has been done to his car by fellow employees on the employer's premises on past occasions.
"That claimant didn't ask his supervisor if he could help his co-worker, nor did his supervisor tell him he could or could not assist him; nor has any employee in the past ever been prohibited from helping another employee on company time.
"Consequently, it appears that Mr. Evans had permission of his supervisor to carry on this task. In addition, it was established that this was a somewhat common practice of the employees and certainly there is some benefit to the employer in this practice since, if it were not allowed, it would force employees to call an independent garage to help them start their cars."
On review the Commission considered only one of respondent's six points on appeal; namely, whether claimant's injury arose out of and in the course of employment, finding:
"At the time of the accident neither of the employees was on duty. They had checked out from work and although their cars were on the parking lot of their employer, they were doing nothing that in any way contributed to the interest or service of such employer. Appellee [claimant] was not directed to assist his co-worker nor did he seek permission to do so from his employer.
"Contrary to the Judge's finding there simply is no evidence to show that the injury `must be considered to be within the course and scope of employment.' Thus, since there was no testimony in the record to establish a `common practice' of employees helping other employees with their cars, but rather what testimony there was established that while help may have been rendered on two or three occasions, we cannot accept this as the establishment of a practice in the light of the long period of employment of the Appellee."
In reviewing the Judge's order, the Commission found present in the instant case none of the definition elements found necessary in Hill v. Gregg, Gibson & Gregg, Inc. (Fla. 1972), 260 So.2d 193, in which this Court quoted with approval Fidelity & Casualty Co. of New York v. Moore (Fla. 1940), 143 Fla. 103, 196 So. 495, 496, as follows:
"`[F]or an injury to arise out of and in the course of one's employment, [1] there must be some causal connection between the injury and the employment or [2] it must have had its origin in some risk incidental to or connected with the employment or that [3] it flowed from it as a natural consequence. Another definition widely approved is that [4] the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.' (Emphasis supplied.)" 260 So.2d at 195.
In our opinion the Commission erred in finding there is no evidence to show claimant's injury was within the course and scope of his employment. Contrary to the finding of the Commission, our review of the record discloses that claimant was clearly on company time when the accident occurred. Claimant testified, and it is unrebutted, that he was on *665 company time and after he was injured between three and four o'clock he returned to work for about two and one-half hours before going home at 6:30 P.M. Earl Putnal, claimant's acting supervisor in the absence of James Kelly on the day of the accident, also testified claimant finished work after the accident although his leg was sore and badly bruised. Furthermore, although immaterial to our decision herein, there is no testimony whatsoever in the record to indicate, as the Commission found, that claimant's co-worker Givens was not on company time when the accident occurred. In fact, neither Givens nor any other witness testified to Givens' status at the time of the accident.
As to the matter of whether it was a common practice for respondent's employees to help one another start or work on their cars, we agree with the Judge that it was. Claimant testified that he had worked on his own car and helped others start theirs. He also testified that he had repaired the air conditioning on both his supervisor James Kelly's car and Dave Lazar's car, that he had put engine seals in Joe Banza's car, that he had helped a secretary start her car and observed other employees helping one another start their cars on several occasions, all on company time. Earl Putnal testified that to his knowledge claimant might have helped someone start his car, as here, on one or two previous occasions. James Kelly also testified that claimant may have worked on employees' personal cars four or five times.
The Judge found from the circumstances outlined above that claimant had tacit or implied permission from his supervisor and it was common employee practice to help a fellow employee start his car, while the Commission contrarily found that claimant was not directed to and did not seek permission to assist Givens. However, claimant testified that while he did not seek permission nor was he told by his supervisor to start Givens' car, he was subject at the time of his injury to the orders of his acting supervisor, Putnal, who observed him, Givens and a third employee start the car without ordering them not to. Claimant also testified that he would not have assisted Givens if Putnal had told him not to. Putnal testified that claimant had not asked permission to start the car, but that he stood on the dock watching claimant start the car when the accident occurred and that he helped separate the cars thereafter. We conclude from the facts presented that claimant had the implied consent of his supervisor to assits his fellow employee during working hours, at least on this one occasion resulting in his injury, and therefore did not need express permission to do so.
We think it was reasonable for the Judge to conclude from these facts that it was customary in their employment for one employee to assist another in starting or in repairing his car on the employer's lot and that under the related circumstances it would be unreasonable to hold that such assistance was not incidentally work-related and beneficial to employer. Cooperation of this kind among employees inures to the morale of the working force and is incidentally beneficial to employer.
We therefore find that claimant's injury arose out of and in the course of his employment with respondent under definition [4] above-quoted from Hill, supra; i.e., the injury must occur within the period of employment, at a place where the employee may reasonably be and while he is engaged in doing something incidental to his employment.
Claimant also urges this Court to adopt a rule requiring the Commission to reach and dispose of all issues raised there for review when it reverses an award of compensation solely for lack of a causal relationship in order to avoid further proceedings below. The cases are legion which hold an appellate court, and similarly an appellate administrative tribunal, need not consider all questions raised which *666 are rendered moot by a single issue or issues disposing of the case. To adopt a rule to the contrary, as urged by claimant, would be procedurally unsound and perhaps greatly overburden an already overworked Commission, and accordingly we decline to do so.
Therefore, the writ of certiorari is granted, the order of the Industrial Relations Commission is quashed and the cause is remanded for further proceedings consistent herewith, with instructions to consider respondent's other points raised on review.
It is so ordered.
ADKINS, C.J., and BOYD and McCAIN, JJ., concur.
ROBERTS, J., dissents.