Martin v. Bonclarken Assembly

LUTHER Y. MARTIN, FATHER, EDNA MARTIN, MOTHER OF VINCENT KEITH MARTIN, DECEASED, EMPLOYEE v. BONCLARKEN ASSEMBLY, EMPLOYER, EMPLOYERS COMMERCIAL UNION INSURANCE CO., CARRIER

No. 7729IC314

(Filed 7 March 1978)

1. **Master and Servant § 60.4— workmen's compensation—laborer at assembly grounds—death by drowning in lake—accident arising out of and in course of employment**

    The death of a 15-year-old laborer by drowning while swimming in a lake on his employer's premises during his lunch hour when the lifeguard was not on duty arose out of and in the course of his employment where the public was not invited to swim in the lake; decedent was authorized by his employer to swim in the lake during his lunch hour; and a regulation prohibiting swimming in the lake when the lifeguard was not on duty had not been communicated to decedent.

2. **Master and Servant § 71.1— workmen's compensation—death of minor employee—amount of award—rate of pay—job decedent would have been promoted to**

    The evidence supported an award for the death of a minor employee based on a wage of $2.25 per hour for a class of work which the minor employee "would probably have been promoted to" where it showed that decedent was earning $2.00 per hour at the time of his death and that decedent's father, who did the same type of work, was making more than $2.00 per hour but not as much as $2.50 per hour.

APPEAL by the defendants from an order of the North Carolina Industrial Commission entered 15 February 1977. Heard in the Court of Appeals 7 February 1978.

The plaintiffs were the father and mother of Vincent Keith Martin, a 15-year-old boy, who drowned on 30 July 1974. At the time of the tragic accident, the decedent was employed as a laborer by the defendant, Bonclarken Assembly, and was swimming in a lake on the grounds of the Assembly during his lunch hour. The lake had a swimming area enclosed by a rope and within the swimming area there was a smaller section enclosed by a chain. Vincent Keith Martin was within the roped area but outside the chain when he drowned.

At the time the decedent entered the lake, the lifeguard had left to eat lunch. When the lifeguard left the lake, he removed some buoys from the water and locked them up. No sign was posted saying the pool was closed.

A sign was posted by the entrance to the lake at a place at which Vincent Keith Martin could have read it. The sign read as follows:

## *LAKE REGULATIONS*

MONDAY-SATURDAY, Swimming and boating under supervision of lifeguard until 4:30 p.m.

MONDAY-SATURDAY, Swimming *only* 5:00 p.m.-7:00 p.m. AT YOUR OWN RISK.

SUNDAY ONLY, Lake Open from 2:00 p.m.-5:00 p.m. under supervision of lifeguard.

SWIMMING TEST BY LIFEGUARD
REQUIRED FOR SWIMMING
BEYOND CHAINED AREA

Mr. Harold Mace, the resident director of the Assembly, testified:

"We have two types of orientation. When we bring our resident staff in, we conduct—we have an orientation session at which time there is a several-page document of regulations given and they are instructed specifically that these rules, plus any posted rules, must be obeyed.

To the paid employees . . . the lake regulations are posted in order to reach anyone that we may fail to reach within the orientation period."

Vincent Keith Martin was a paid employee of the Assembly and not a member of the resident staff. There is no evidence that he ever saw any written regulations other than the sign posted at the lake.

After a hearing, Deputy Commissioner Richard B. Conely made findings of fact and conclusions of law substantially as follows: Vincent Keith Martin was employed by defendant Bonclarken Assembly on the date of his death. During his lunch hour he went swimming in the lake, which he had permission to do. There were regulations prohibiting swimming when the lifeguard was not on-duty during the lunch hour, but the decedent had not been instructed as to the regulations. The sign which was posted at the lake and which should have been seen by the de-

cedent was vague. It did not state that the lake was closed when the lifeguard was off-duty and could have meant that the lifeguard would be on-duty Monday through Saturday until 4:30 p.m. The decedent could have reasonably assumed he was swimming within the chained area as required by the posted regulations. He was not familiar with the lay out of the lake and could have assumed the roped-in area was the chained area. The Hearing Commissioner awarded compensation to the plaintiffs. The Industrial Commission adopted and affirmed the order of the Hearing Commissioner and the defendants have appealed to this Court.

*George W. Moore, for plaintiffs appellees.*

*Morris, Golding, Blue and Phillips, by J. N. Golding, for defendants appellants.*

WEBB, Judge.

On this appeal, we are limited to determining whether the Industrial Commission's findings of fact are supported by competent evidence and whether the conclusions of law based on the facts found are correct. *Inscoe v. Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977). We hold that the findings of fact are supported by competent evidence and the conclusions of law are correct.

The defendants have excepted to the following facts found by the Hearing Commissioner: (1) "Decedent was permitted by the written regulations of the defendant employer to use the swimming facilities at the lake when off-duty." (2) "There is no evidence that plaintiff was ever instructed that the lake was closed during lunch period or what constituted the 'chained area' of the lake." (3) There is no evidence ". . . that [decedent] was familiar with the way the lake was arranged for swimming," and (4) "There is no evidence of record that there were any signs posted to indicate . . . that the lake was closed at the time the decedent entered it."

As to finding number (1) above, the defendants contend there is nothing in the record to support a finding that the decedent was permitted by written regulations to use the swimming facilities. Conceding without deciding the point that he was not permitted by written regulations to do so, there is substantial evidence that he had permission to use the swimming facilities

Martin v. Bonclarken Assembly

and if the words "by written regulations" are struck from this finding of fact, it does not affect the outcome of this case.

As to finding of fact number (2) above, Guy Hill Jones, decedent's superior testified: "I never gave them any instructions either way on swimming." Mr. Mace's testimony was that the resident staff received instructions. The decedent was not a member of the resident staff. The defendants argue that the posted sign and the lay out of the lake itself, including the chained area, is enough to invalidate this finding. We believe the Hearing Commissioner was reasonable in his conclusion that there had to be an actual imparting of information from one person to another in order to find there had been an instruction.

As to finding number (3), the defendants argue that the fact the decedent had worked around the lake and had talked to the lifeguard while the lifeguard was on-duty invalidates this finding. We cannot hold the Hearing Commissioner erred in making such a finding on this evidence.

As to finding number (4) above, the evidence was that the lifeguard had taken the buoys out of the water. There is no evidence that he or anyone else had posted a sign that the lake was closed.

The defendants have also taken exception to a finding denominated by the Hearing Commissioner as a conclusion of law as follows: "The circumstances of the drowning are that the decedent was using facilities authorized by the employer for his use. Although there was a regulation that the lake was closed during the lifeguard's lunch hour, that regulation was never communicated to the decedent." We believe this conclusion is amply supported by competent evidence.

[1] The defendants contend that the accident which caused the death of Vincent Keith Martin was not one "arising out of or in the course of" his employment. These words, which are found in G.S. 97-2(6) have been interpreted many times. See all the cases cited in this opinion and also *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E. 2d 47 (1968). The phrases "arising out of" and "in the course of" are not synonymous and both must be fulfilled in order for the plaintiffs to recover.

An accident arises out of employment when it is the result of a risk or hazard incident to the employment and is not from a

hazard common to the public. There is no evidence in this case that the public was invited to swim in the lake. Accidents while swimming were a hazard for employees of the Assembly and not to the public at large. The accident arose out of the decedent's employment.

In this jurisdiction, three conditions must be fulfilled in order for an accident to be in the course of employment. These three conditions are of time, place, and circumstance. "Time" includes the time during a working day including the lunch hour. "Place" includes the premises of the employer. Clearly both these conditions are fulfilled in this case.

In respect to "circumstances," compensable accidents are those sustained while the employee is doing what a man so employed may reasonably do within a time which he is employed, and at a place where he may reasonably be during that time to do that thing. In view of the finding that decedent was authorized by the Assembly to swim in the lake during his lunch hour and that the regulation prohibiting swimming when the lifeguard was not on-duty had not been communicated to him, we hold the condition of "circumstance" is fulfilled.

The defendants cite several cases which they contend should govern and preclude recovery by the plaintiffs. Among these cases are *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972); *Horn v. Sandhills Furniture Co.*, 245 N.C. 173, 95 S.E. 2d 521 (1956); *Moore v. Stone Company*, 242 N.C. 647, 89 S.E. 2d 253 (1955); *Matthews v. Carolina Standard Corporation*, 232 N.C. 229, 60 S.E. 2d 93 (1950); *Morrow v. State Highway and Public Works Commission*, 214 N.C. 835, 199 S.E. 265 (1938); *Teague v. Atlantic Co.*, 213 N.C. 546, 196 S.E. 875 (1938). We believe that all these cases are distinguishable. Each of them had some factor not present in this case which precluded coverage for the plaintiff. In *Robbins* it was held not to be a risk of employment to be killed by a jealous husband of a co-worker. In *Horn*, an employee crossing a public street to eat lunch was struck by an automobile. This was held a risk to which the public at large was subject and not limited to employees of the defendant. In *Moore*, the plaintiff, while eating lunch, out of curiosity set off 300 dynamite caps. It was held the plaintiff was not authorized to play with dynamite caps while eating lunch. In *Matthews*, the employee, during his lunch break, tried to jump on a truck that was moving on his

employer's premises. It was held this was not a hazard incident to his employment. In *Morrow*, the deceased jumped into a river to recover a paint brush after being told not to do so by his foreman. In *Teague*, a death was held not to arise out of employment when the deceased, contrary to the rules of his employer, tried to ride a crate conveyor to the second floor of the building rather than using the stairs.

In the case at bar, the Hearing Commissioner has found, based on competent evidence, and the Industrial Commission has adopted his findings, that Vincent Keith Martin, while employed by Bonclarken Assembly, was drowned while swimming during his lunch hour in a lake on the premises of the Assembly. It was also found, based on competent evidence, that the decedent was authorized by his employer to swim in the lake and although the written regulations prohibited Vincent Keith Martin from swimming while the lifeguard was not on-duty, this part of the regulations was never communicated to deceased. Based on these findings, the plaintiffs are entitled to death benefits.

[2] The defendants' last assignment of error relates to the amount of the award. The Hearing Commissioner awarded to the plaintiffs the sum of $60.00 per week for 400 weeks. It is obvious he calculated this sum at the rate of $2.25 per hour for a forty-hour week. The evidence was that decedent, a minor, was earning $2.00 per hour.

The language of G.S. 97-2(5) applicable at the time of this suit stated:

> Where a minor employee, under the age of 18 years, sustains a permanent disability or dies, the compensation payable for permanent disability or death shall be calculated, first, upon the average weekly wage paid to adult employees employed by the same employer at the time of the accident in a similar or like class of work which the injured minor employee would probably have been promoted to if not injured, or, second, upon a wage sufficient to yield the maximum weekly compensation benefit.

The evidence was that the decedent's father, who did the same type of work as the decedent, was making more than $2.00 per hour, but not as much as $2.50 per hour. We hold that this

evidence supports a finding by the Hearing Commissioner of an award based on $2.25 for a wage for a class of job the decedent "would probably have been promoted to."

The order of the Industrial Commission is

Affirmed.

Judges BRITT and HEDRICK concur.