431 So.2d 171 (1983)
B & B CASH GROCERY STORES and Aetna Casualty & Surety Company, Appellants,
v.
John WORTMAN, Appellee.
No. AP-190.
District Court of Appeal of Florida, First District.
March 29, 1983.
Rehearing Denied June 2, 1983.
*172 Jonathan L. Alpert, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellants.
Clifton A. Livingston, Stiles & Livingston, Tampa, for appellee.
LARRY G. SMITH, Judge.
The E/C appeal a workers' compensation award made pursuant to an order of the deputy commissioner determining that claimant's injury arose out of and was in the course and scope of his employment with the employer. We affirm.
The facts as disclosed by the evidence when viewed in the light most favorable to the prevailing party, as we must view it on appeal, are as follows: Claimant was a member of the employer's ground maintenance crew, which had the responsibility of cleaning and mowing the grounds of the employer's stores and the homes of the owners. Claimant and the other members of the crew drove from site to site in vehicles owned by the employer. The work was hot and dirty and facilities for washing off at the job sites were minimal. It was a regular practice for the boys to cool off by going swimming between jobs at public facilities and private homes. These swimming activities were known to the ground maintenance foreman and to the owners to some extent since the crew members sometimes swam in their pools with their permission.
On June 15, 1982, a very hot day, claimant and his two co-workers were travelling between job sites when they decided to stop at the home of one of the co-worker's parents for the purpose of cooling and washing off in the Alafia River. The home was about a mile and one-half from the direct route between stores. Once there, claimant dove into the water and struck his head on a rock causing a broken neck and quadriplegia.
In addition to the above recited findings by the deputy, the record reveals that claimant and his co-workers were entitled to a fifteen minute break in the morning and afternoon and that the boys had not taken an afternoon break when the accident occurred. Further, there was testimony from at least one of the boys that he worked better after rinsing off between jobs.
We agree with the deputy's conclusion, in finding the accident compensable, that the June 15, 1982 swimming excursion was an insubstantial deviation which was a direct result of the need to wash off caused by claimant's work conditions.
In Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193 (Fla. 1972), the Supreme Court quoted with approval the following language in Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495, 496 (1940):

*173 `[For] an injury to arise out of and in the course of one's employment, [1] there must be some causal connection between the injury and the employment or [2] it must have had its origin in some risk incidental to or connected with the employment or that [3] it flowed from it as a natural consequence. Another definition widely approved is that [4] the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.' 260 So.2d at 195.
We find that claimant's injury arose out of and in the course of his employment under definition [4]. Evans v. Food Fair Stores, Inc., 313 So.2d 663 (Fla. 1975). In Evans, the claimant was injured when he was struck by a fellow employee's car which he had helped start on the employer's parking lot. In finding the injury compensable the Supreme Court relied on the fact that claimant's injury occurred on company time, that it was a common practice for the employer's employees to help one another start or work on their cars, that claimant had the implied consent of his supervisor to assist his fellow employee during working hours, and that cooperation like this among employees inured to the morale of the working force and was incidentally beneficial to the employer.
Similarly, claimant's injury in this case occurred while he was on the employer's payroll, when he was engaged in a common practice of the boys on the ground maintenance crew, doing an activity which he had the implied consent of his supervisor to do, which activity increased the productivity of the employees and was incidentally beneficial to the employer.
The fact that claimant was attending to his personal comfort at the time of the injury does not defeat compensability. Baker v. Orange County Board of County Commissioners, 399 So.2d 400 (Fla. 1st DCA 1981); and Cunningham v. Scotty Home Builders, 9 FCR 1 (1973), cert. den. 307 So.2d 182 (Fla. 1974). In Baker, the claimant's employment required his exposure to cold weather and with his employer's knowledge, the claimant began wearing battery operated socks. He was injured when the socks caused severe burns on the bottom of his feet, resulting in gangrene and requiring the amputation of a portion of one foot. This court concluded that the contributing employment conditions and circumstances rendered the claimant's injury one which arose out of his employment. In Cunningham, a case more factually similar to this one, the claimant was injured in an automobile accident while returning to his place of employment after going to a nearby 7-Eleven store to purchase a sandwich and drink. There, as here, the employer had no rules relating to the time and location of refreshment breaks, nor was the claimant either expressly or impliedly prohibited from taking a refreshment break in this manner. Relying on the principle that doubt should always be resolved in favor of the working man, Naranja Rock Company v. Dawal Farms, 74 So.2d 282, 286-287 (Fla. 1954), the Commission determined that the employee had reasonably attended to his personal comfort.
Although none of these Florida decisions is on "all four" research has disclosed a California decision that is remarkably similar. In State Compensation Insurance Fund v. Workmen Compensation Appeals Board, 67 Cal.2d 925, 434 P.2d 619, 64 Cal. Rptr. 323 (1967), the claimant and some fellow employees, during working hours, went for a swim in a canal a short distance from the employer's property on an extremely hot day. The employee dove into the water and struck his head, suffering injuries. There was evidence that the employee was entitled to a break which could be taken on or off the premises and he had not taken a break when he dove into the canal to cool off. The employee was awarded benefits and the Supreme Court of California affirmed, stating that the evidence supported the inference that some swimming on company time in the nearby canal, although not encouraged, would be tolerated, and that on a day of extreme *174 heat the cooling effect of the swim during a permitted work break would improve efficiency of the employees. See also Martin v. Bonclarken Assembly, 35 N.C. App. 489, 241 S.E.2d 848 (1978); Scheffler Greenhouses, Inc. v. Industrial Commission, 66 Ill.2d 361, 362 N.E.2d 325 (1977).
Nevertheless, the employer/carrier contend that even if swimming in the river under certain circumstances could be held to be within the course and scope of employment, the foolish act of diving headfirst into the river constituted horseplay of such a substantial character as to amount to an abandonment of the employment. City of Miami v. Granlund, 153 So.2d 830 (Fla. 1963). We cannot agree. In Granlund, the employee, in the spirit of frolic took what he thought was an empty gun, pointed it at a fellow employee, then placed the barrel at his head and pulled the trigger, killing himself. We find the facts of Granlund far removed from this case, in that, among other distinctions, there is no connection between the picking up of a deadly weapon, a revolver (much less the act of placing it to his head and pulling the trigger) and the conditions of the employment, nor was such an act incidental to or a natural consequence of the employment. On the other hand, we think the facts here relate more closely to those in Times Publishing Company v. Walters, 382 So.2d 720 (Fla. 1st DCA 1980). In Walters, a fourteen year old newsboy was injured in a foot race which took place during an enforced lull. Examining the extent and seriousness of the deviation, the completeness of the deviation, the extent to which similar activity had either been forbidden or had become an accepted or tolerated practice, and the extent to which such horseplay may have been expected or reasonably foreseeable in the employment, this court concluded that given the totality of the circumstances, the youth had engaged in an insubstantial deviation and his injury was compensable. Similarly, diving into the Alafia River was a momentary deviation without obvious danger, was impliedly tolerated, and was reasonably foreseeable. Compare Miles v. Montreal Baseball Club, 379 So.2d 1325 (Fla. 1st DCA 1980).
Accordingly, the order appealed is AFFIRMED.
ROBERT P. SMITH, C.J., concurs.
THOMPSON, J., dissents with opinion.
THOMPSON, Judge, dissenting.
I dissent. To be compensable, an accident must both arise out of and in the course of one's employment. For an injury to arise out of and in the course of one's employment it must be causally connected to the employment, or it must originate in some risk incident to or connected with the employment, or it must flow as a natural consequence from the employment. The injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to his employment.
There is absolutely no causal connection between the claimant diving into the Alafia River and his employment. The claimant's dive into the river did not originate in any risk incident to or connected with his employment, nor did it flow as a natural consequence from his employment. The injury did not occur within the period of employment. Instead, it occurred while the claimant was deviating from his employment for his own personal comfort and benefit and while he was not fulfilling any employment duty, or performing any act for his employer's benefit, or engaged in performing anything incidental to his employment.
The act of diving head first into the edge of the river resulted in an injury to the claimant that neither arose out of nor in the course of his employment. I would therefore reverse the order of the deputy commissioner and remand for the entry of a final order denying the claim.