473 So.2d 1380 (1985)
James M. GREATHEAD, As Personal Representative of the Estate of Michael James Greathead, Deceased, Appellant,
v.
ASPLUNDH TREE EXPERT Company, the Travelers Insurance Company, and George Michael Jacobs, Appellees.
No. AY-474.
District Court of Appeal of Florida, First District.
August 15, 1985.
*1381 William A. Bald of Pajcic Pajcic Dale & Bald, Jacksonville, for appellant.
Victor M. Halbach, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellees Asplundh Tree Expert Co. and The Travelers Ins. Co.
Carl K. Staas and James H. McCarty, Jr. of Boyd, Jenerette, Staas, Joos, Williams & Felton, P.A., Jacksonville, for appellee George Michael Jacobs.
SHIVERS, Judge.
Appellant, plaintiff in the proceedings before the trial court, appeals the entry of final summary judgment in favor of each of the three defendants/appellees. We reverse as to all three.
The appellant brought this action on behalf of his son, Michael Greathead, who was killed while employed by appellee, Asplundh Tree Expert Company. In February of 1982, Greathead was employed as part of a work crew consisting of himself, appellee/Jacobs (foreman of the crew), Robert Golden and Michael Roe. The crew's assignment was to trim tree limbs from around utility wires and poles. The tree limbs would then be fed into a "chipper" which would reduce the limbs to wood chips and expel them into a truck (which also pulled the chipper-trailer assembly.) Both the truck and the chipper-trailer were owned by Asplundh.
On the morning of Greathead's accident, the crew assembled at its usual time and place. Before proceeding to their work site on State Road 13, they performed several customary tasks, such as emptying the previous *1382 day's accumulation of wood chips. The accident occurred on a dirt road as the crew was proceeding from the dump site to State Road 13. As appellee Jacobs drove the truck along Roberts Road, Greathead apparently asked permission to ride on the chipper. Jacobs at first refused, but when Greathead asked again several minutes later, Jacobs finally assented. He stopped the truck, allowing Greathead to walk to the rear of the trailer. Greathead then opened the chipper and stood on the "feed table" while holding on to two steel bars and facing the rear of the truck. Jacobs testified that he drove approximately 10-15 miles per hour along the dirt road and occasionally turned the wheel of the truck so that he could observe Greathead in his rear-view mirror. At one point, Roe told Jacobs that he could no longer see Greathead. Jacobs stopped the truck and found Greathead lying in the road unconscious. When asked during deposition how fast Jacobs was driving, Roe stated, "[i]t could have been somewhere around 30-35 miles an hour. It didn't take much to whip this chipper around." He also indicated the chipper was sliding back and forth on the road, and that he observed Greathead hanging on with one hand and waving with the other. When he came back into view the next time, Greathead was not on the chipper. It was undisputed that Greathead died as a result of his injuries from the fall.
Asplundh's "Foreman's Manual" forbade riding on the chipper-trailer and, specifically, on the feed table. Jacobs testified by deposition that he did not recall that either he or any of his crew members ever rode on the chipper except when it was necessary to do so to get the chipper "unstuck" or out of a ditch. He stated that he had, however, heard of other Asplundh employees riding the chipper and that his supervisor had told him not to feel bad about the accident because "[w]e've all done it at sometime or another, let somebody ride back there." Although both Golden and Roe testified that they had never ridden the chipper, Roe stated that he had heard of other employees riding the chipper and that the employees had received instructions or warnings from their supervisors not to do so.
Approximately six months after the incident, Jacobs was charged by criminal information with one count of manslaughter and one count of vehicular homicide. He pled not guilty to the manslaughter charge and guilty to the vehicular homicide charge. In exchange, the State agreed to nolle prosse Count One and to recommend withholding adjudication of guilt with three years probation as to the vehicular homicide count.
The appellant, Greathead's father, filed a wrongful death action against the three appellees, alleging that Jacobs acted with gross negligence, recklessness, and willful disregard in driving the truck, that Asplundh was negligent as the owner of the truck, and that Travelers insured both Asplundh and Jacobs. Asplundh and Jacobs moved for summary judgment on the basis of the exclusive remedy provision of the workers' compensation statute. Travelers also moved for summary judgment, claiming that its policy of insurance excluded any coverage for the accident described in plaintiff's complaint. The trial granted final summary judgment as to all three defendants.
In its first point on appeal, appellant asserts the court erred in granting summary judgment in favor of appellee/Asplundh. In order for an injury to be covered by the workers' compensation law, the injury must arise "out of and in the course of employment." Section 440.09(1), Florida Statutes. In the case of such an injuury, the employer's liability under the workers' compensation statute is exclusive and in place of all other liability. Section 440.11(1). However, as pointed out by appellant, the "horseplay" doctrine operates to deny compensation to an employee who, although he is "at work," engages in playful activity which is substantial enough to amount to a deviation from his employment. City of Miami v. Granlund, 153 So.2d 830 (Fla. 1963); Times Publishing Co. v. Walters, 382 So.2d 720 (Fla. 1st DCA 1980); and B & B Cash Grocery Stores v. Wortman, 431 So.2d 171 (Fla. 1st DCA *1383 1983). A number of factors are relevant to the question of whether an employee's "horseplay" is substantial enough to preclude compensability, including:
(1) the extent and seriousness of the deviation,
(2) the completeness of the deviation (whether it involved an abandonment of employment duties),
(3) the extent to which similar activity had either been forbidden or had become an accepted or tolerated practice, and
(4) the extent to which such horseplay may have been expected or reasonably foreseeable in the employment.
Times Publishing Co. v. Walters, 382 So.2d at 721.
In light of these factors, we would agree with appellant that the instant case presents an issue of fact as to whether Greathead's actions in riding the chipper constituted "horseplay" so as to remove him from the course of employment at the time of the injury.
We also reverse the summary judgment entered in favor of appellee/Jacobs. Section 440.11(1), Florida Statutes provides that the immunities from liability enjoyed by the employer also extend to employees of the employer "where such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive [workers' compensation] benefits... ." The immunity is not applicable, however, if the employee acts "with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death... ." Section 440.11(1), Florida Statutes. Thus, as we find that an issue of fact exists as to whether Greathead's injury occurred within the course of his employment, we find that summary judgment as to Jacobs on the basis of section 440.11(1) was improper. Alternatively, we also find that there exists an issue of fact, such as to preclude summary judgment, as to whether Jacobs' actions constituted gross negligence.
Third, appellant argues that summary judgment as to appellee/Travelers was improper. We again agree with appellant and reverse on this point. The business automobile policy issued to appellee/Asplundh by Travelers contained, among others, the following policy exclusions:
This insurance does not apply to:
2. Any obligation for which the insured or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.
4. Bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment.
5. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.
Travelers concedes that Jacobs, as well as Asplundh, constitute "insureds" under the policy, but argues that the above provisions operate to exclude coverage. In particular, Travelers argues that the literal language of No. 2 should be construed to exclude policy coverage simply because Travelers "may" or "might" eventually be held liable under the workers' compensation law. We disagree with such a reading. Florida case law suggests that the purpose of exclusions such as No. 2 is to exclude coverage of those employees protected by the workers' compensation law, whereas the language of No. 5 acts to exclude liability for injury to employees generally. Although the two may overlap to a certain degree, they are not to be read together to exclude only those employees protected by workers' compensation. See Employers Liability Assurance Corp. v. Owens, 78 So.2d 104 (Fla. 1955); Griffin v. Spiedel, 179 So.2d 569 (Fla. 1965); 31 Fla.Jur.2d Insurance § 763. In any event, so long as an issue of fact exists as to course of employment, summary judgment based on the application of either No. 2 or No. 5 is improper.
*1384 As to No. 4, known as a "co-employee" or "cross-employee" exclusion, the case law is clear that coverage of the co-employee will be excluded where (1) the co-employee is an insured under the policy, and (2) both the employee and the co-employee were acting within the course and scope of their employment at the time of the injury. Aetna Fire Underwriters Insurance Co. v. Williams, 422 So.2d 7 (Fla. 2d DCA 1982). See also McRae v. Snelling, 303 So.2d 670 (Fla. 4th DCA 1974) and General Insurance Co. of America v. Reid, 216 So.2d 41 (Fla. 4th DCA 1968). Thus, as with Exclusions No. 2 and 5, the existence of an issue of fact as to course of employment precludes summary judgment.
Accordingly, the final summary judgment as to each of the appellees is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
ZEHMER, J., concurs.
BOOTH, C.J., dissents.