## Dean H. Goodwin v. Fairbanks, Morse & Co. et al

[184 A.2d 220]

May Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 4, 1962

*John A. Swainbank* for the claimant.

*Downs & Rachlin* for the defendants.

**Shangraw, J.**  This is an appeal direct to this Court, under the provisions of 21 V.S.A. §672, from an award made to the claimant by the Commissioner of Industrial Relations.

The question which has been certified to this Court for review reads:

> "Did the claimant suffer a new injury by accident arising out of and in the course of his employment entitling him to benefits under the Workmen's Compensation Law."

In appeals of this character we do not sit as a fact-finding body.  Our jurisdiction under 21 V.S.A. §672 is limited to a review of such law questions as the commissioner has certified up to us. *McKane* v. *Capital Hill Quarry Co.,* 100 Vt. 45, 46, 134 Atl. 640; *Morrisseau* v. *J. Cole Steel Construction Co.,* 123 Vt. 70, 181 A.2d 53.

The claimant had been employed since 1950 by the defendant Fairbanks, Morse & Company, in its foundry at St. Johnsbury, Vermont.  His employment involved heavy lifting.  While at work in 1956 he noticed a sharp pain in his back which proved to be a ruptured disc.  However, while under a doctor's care, he continued to work until May 17, 1957.

Mr. Goodwin was operated on by Dr. Robert G. Fisher at the Mary Hitchcock Memorial Hospital in Hanover, N. H. in May 1957, and later in August of the same year, at which time a ruptured disc in his lower back at the fifth interspace on the left was removed.  The fourth lumbar interspace was explored at the time and no abnormality was found in the disc, nor was there any evidence of nerve pressure.

The claimant was later examined by Dr. Fisher on December 9, 1957 and on February 3, 1958.  He was found to have recovered satisfactorily and told that he might resume on March 1, 1958.  The claimant continued at light work for about three weeks after which he was employed at "side floor moulding."  This was hard work and necessitated standing on his feet and reaching over to lift castings out of the mold.  An examination of the claimant was again made on September 15, 1958 by Dr. Fisher and his general condition was found to be quite satisfactory.

Despite the fact that claimant continued to have pain in his back and legs, he settled his claim for the 1956 injury with the American Motorists Insurance Company, the then insurance carrier, which settlement was approved by the commissioner on December 8, 1958.

In July 1960 the degree of pain increased, especially in his leg, and progressed to the point where claimant had to stop work about November 7, 1960. He did not return to his employment until August 8, 1961.

On November 13, 1960 claimant returned to the Mary Hitchcock Memorial Hospital and it was determined that he had a new injury at L4 and complications at L5. The disc at the fourth interspace was protruded. On November 18, 1960 an operation was performed by Dr. Fisher and Dr. Robert C. Shoemaker. The protruded intervertebral discs at the fourth and fifth interspaces on the left side were removed and Dr. Shoemaker did a bone graft from L5 to S1.

The claimant predicates his claim on a new injury which became apparent during 1960. The defendant Zurich Insurance Company is the insurance carrier for the period involved here. The defendants deny liability on the ground that the claimant has failed to show that this new injury arose out of and in the course of his employment by Fairbanks, Morse & Company.

The defendants urge that there is no evidentiary support, as a matter of law, for certain portions of the following findings made by the commissioner, as relating to the new injury.

"11. I find that, although he had recovered to the point of an end result in his healing process at the time he executed the Final Report and Receipt for 15 percent permanent partial disability in 1958, he still was predisposed to vertebral trouble and that the extra heavy work tended to aggravate his weakness and sometime in 1960 cause the new injury to the disc at the fourth interspace again disabling him. This constituted a new injury arising out of and in the course of his employment and is compensable.

"12. He had worked tearing down a building in July, 1960 and had shoveled dirt in opening a drain, but there was no evidence that he had experienced any remarkable difficulty while so doing. I find that there is a reasonable probability that the more arduous lifting to which claimant was assigned was too great a strain on his back and finally in 1960 at sometime or times, caused the break-

down at L4 the same as had previously occurred to L5 in the first injury."

As to the outside work of the claimant, referred to in finding No. 12, it appears from the transcript that on certain Saturdays during the summer of 1960 the claimant worked for persons other than Fairbanks, Morse & Company. In July of 1960 he assisted in the tearing down of a two-story or story-and-half building which, among other things, required the moving and transportation of boards and rafters, working about seven hours per day. He did not finish the job because of too much pain. During October or November of 1960 the claimant also assisted in repairing a sewer. The claimant was improved as a witness and was unable to recall any incident at any time, while working for Fairbanks, Morse & Company or otherwise, that would identify the exact time or place when the new injury occurred. This could not be pinpointed either as to time or place of occurrence. While the claimant continued to have aches and pains after the first operations in 1957, at no time later did he feel that his back was strained or that he suffered an accident on any special day or place.

Dr. Fisher's deposition was taken at the request of the claimant and made a part of the record by agreement of counsel. In reviewing the doctor's testimony as to causes of herniated discs, such as here, he stated that they could have been caused by: a minor traumatic injury; bending over to tie a shoelace; tearing down of a building could without question precipitate Mr. Goodwin's trouble, in addition to his work; tearing down a building could have been the causative factor; in fact, almost any exertion could have brought on another attack because of the claimant's predisposition to back trouble as a result of the first injury; and that this condition may happen to anyone, but there may be congenital conditions which may predispose the patient to trouble.

The door being thus opened as to the causation of the second injury, and for which claimant seeks compensation, leads us further to the doctor's testimony concerning the precise question now considered. Did the claimant's new injury arise out of and in the course of his employment by Fairbanks, Morse & Company?

In referring to the operations in 1957, Dr. Fisher stated that heavy lifting was the cause of the breakdown of the disc then operated upon. No congenital defects were observed which would predispose Mr.

Goodwin to that injury. As to the second injury which became apparent in the year 1960 resulting in the operations by Dr. Fisher and Dr. Shoemaker, on direct examination Dr. Fisher testified:

Q. Then could you say that this type of injury could be the result of simply his heavy work? Or the exertion required by his heavy work?

A. Yes.

Q. As a result of his previous injury in 1957, would you say that he was then, that is in 1960, predisposed to injury as a result of physical exertion and heavy work?

A. I believe so.

Again referring to the second injury on cross-examination of Dr. Fisher, the following appears:

Q. In other words, Doctor, is it fair to say that on the basis of your present information you are not able to state as a probability whether the injury which precipitated this attack occurred during employment or while he was not employed?

A. Quite frankly, I would hesitate to state that this was the true causative factor and I would hesitate to state probabilities on the basis of our history as things are stated. But I cannot deny the fact that this work on the outside could have predisposed him to recurrent difficulties.

Q. And, as far as you are concerned at the present time, you would be unable to state as a probability whether the disability came from things done during working hours or those done during off hours?

A. I believe so.

Q. When you say "I believe so," what do you mean? You mean you cannot state as a probability?

A. Yes.

On redirect-examination Dr. Fisher further testified:

Q. I have one or two more, Doctor. You have testified that as a result of this first injury or history of back trouble, he was predisposed to back trouble. Do I gather that thereafter any heavy exertion, in fact almost any exertion he made, could bring on another attack, is that right?

A. Yes, I think so.

█ That the findings of the commissioner are binding on this Court if sufficiently supported by evidence is beyond question; and it is equally true that the burden is on the claimant to establish the facts essential to the right asserted. *McKane* v. *Capital Hill Quarry Co.*, 100 Vt. 45, 46, 134 Atl. 640. The award of the commissioner is equivalent to the judgment of a trial court and doubtful findings must be construed to support it if this may reasonably be done. If fairly and reasonably warranted by the evidence such findings are conclusive and binding on this court. *Norman* v. *American Woolen Co.*, 117 Vt. 28, 31, 84 A.2d 125; *Wilkins* v. *Blanchard-McDonald Lumber Co.*, 115 Vt. 89, 90, 52 A.2d 781; *Morrisseau* v. *J. Cole Steel Construction Company, supra.*

In view of the record, the vital question as to when and where the claimant sustained the injury of which he complains remains unanswered, nor could it be determined by the commissioner except by indulging in speculation or surmise, which affords no legal basis for the award.

The claimant experienced no unusual pain or strain at any particular time or place. It became necessary that the claimant establish a causal connection between the injury and the employment before compensation should have been allowed. The medical testimony fails to establish that the injury was directly attributable to his employment by Fairbanks, Morse & Company—merely a possibility. See *Laird* v. *State of Vermont Highway Dept.*, 110 Vt. 195, 199, 3 A.2d 552; *Tracy* v. *Mass. Bonding & Ins. Co.*, 121 Vt. 371, 374, 159 A.2d 86; *Coppa* v. *M. A. Gammino Construction Company*, R. I., 182 A.2d 322.

█ Having in mind the claimant's arduous outside work, the most compelling reasons exist for requiring that the evidence establish that the injury happened at a fixed time and place and was attributable to a clearly traceable incident of his employment. *Brown* v. *Bristol Last Block Co.*, 94 Vt. 123, 125, 108 Atl. 922. Otherwise, as here, the door would be opened wide to conjecture.

The record fails to support the commissioner's award and the order must be reversed.

*Judgment that the order of the Commissioner of Industrial Relations awarding compensation to the claimant should be, and the same*

*hereby is, annulled, and set aside. The defendants to recover their costs in this Court. Let the result be certified to the Commissioner of Industrial Relations.*