652 So.2d 1209 (1995)
JEAN FLUET, INC. and Continental Loss Adjusting Service, Appellants,
v.
Donald HARRISON, Appellee.
No. 94-4173.
District Court of Appeal of Florida, First District.
March 29, 1995.
*1210 Nancy A. Lauten and Kristine A. Ebbesmier of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellants.
Michael E. Sweeting of Paderewski & Sweeting, P.A., Sarasota, for appellee.
WENTWORTH, Senior Judge.
This is an appeal from an interlocutory workers' compensation order determining compensability of an injury. Fla.R.Work. Comp.P. 4.160(b)(3). We affirm, finding no substantial deviation from employment.
Claimant Donald Harrison was employed as a carpenter's helper on September 18, 1990, when he was involved in an incident that resulted in injury to his right eye. The accident was reported as having occurred as a result of a nail that was being hammered and allegedly ricocheted and hit claimant in the right eye. The appellant employer, Jean Fluet, Inc., later learned that the accident occurred as a result of a "nail tossing" incident between claimant and his supervisor, Rodney Meyers. The facts were as stated in the order:
6. The claimant was sheeting a roof early in the morning on September 18, 1990. The claimant testified that he was "trying to get everyone going". The claimant ran up a roof truss and tossed a nail in the direction of the foreman. The nail struck his foreman after bouncing off *1211 the floor either in his leg or in his back, depending on the testimony of the witness. The supervisor then turned and tossed the nail in the direction of the claimant who, upon looking in the direction of the supervisor, was struck in the right eye with the nail and suffered a significant injury to his eye. The testimony of all concerned indicates that this activity lasted for only a few seconds.
7. The claimant initially reported the injury as a result of him striking a nail with his hammer and the nail bouncing up and hitting his eye. Claimant testified that he was fearful that the Worker's Compensation would not cover his injury and was afraid that his supervisor Rodney Meyers, would get fired for the nail throwing incident. Subsequently he told his employer that the nail had been thrown by his supervisor Rodney Meyers and struck him in the eye.
8. It is clear from the testimony of all concerned that Mr. Fluet, the owner/employer, did not condone such activities on the job site, however there was no testimony that he ever told this claimant that the nail throwing was not tolerated on the job site. All witnesses testified that nail throwing was something which "just occurred" in construction, not regularly, but it does happen.
When the employer eventually learned in April 1991 the truth of how claimant injured his eye, he fired the supervisor. The E/C initially paid workers' compensation benefits to claimant, but when the employer was informed that the incident did not occur as reported by the claimant, benefits were terminated.
Claimant subsequently filed a claim for additional benefits which was defended on the grounds that no accident arising out of and in the course of employment had occurred, but that claimant's injuries had resulted instead from horseplay, precluding compensability. At the October 31, 1994, hearing, the parties agreed to bifurcate the hearing so that the only issue for determination was the compensability of the industrial accident. After hearing testimony and reviewing the evidence, the judge of compensation claims (JCC) entered an order concluding that claimant was entitled to benefits. Although she agreed with the E/C that the incident constituted horseplay, she nonetheless found that the deviation was momentary and did not amount to an abandonment of claimant's employment duties. The JCC rejected the E/C's argument that claimant had been an aggressor in the incident, and instead found that he did not throw the nail at his supervisor in an attempt to injure him. This interlocutory appeal followed.
The JCC's conclusion, predicated as it is on competent and substantial evidence that was essentially undisputed, is consistent with the rule of law in such cases as Boyd v. Florida Mattress Factory, Inc., 128 So.2d 881 (Fla. 1961) and Times Publishing Co. v. Walters, 382 So.2d 720 (Fla. 1st DCA 1980). Those decisions make clear the point that the extent of deviation is the key inquiry. The conclusion that the deviation in this case did not amount to a wholesale abandonment of claimant's work is consistent with Florida law as enunciated in the cited cases.[1] We recognize that other jurisdictions have produced irreconcilable decisions on seemingly identical fact patterns: 1A Larson, The Law of Worker's Compensation § 23.64, pp. 5-218, 219 (1994). However, the extent of deviation is a primary consideration in Florida, and the JCC in this case properly ruled based on the evidence that the deviation was insubstantial.
The E/C, by a footnote in their brief, argue the applicability of section 440.092(3), Florida Statutes (Supp. 1990), which precludes compensability for accidents that occur while an employee is "deviating from the course of his employment," except in limited circumstances. We accord the term "deviating" as used in the statute the same meaning that it has been given in the cases, including the meaning it has been given in the cases involving *1212 horseplay. In doing so, although this case involves an accident during a momentary deviation, this does not mean that the accident is noncompensable, because a deviation of the sort involved here does not take an employee out of the "course of his employment" within the contemplation of the case law or the statutory language.
The E/C place undue emphasis on the "lull" factor in order to distinguish the cases relied on by the JCC. While this factor has indeed been treated as a special consideration (Larson, § 23.65, p. 5-219), that was necessary only because the "primary test in horseplay cases is deviation," with a focus on abandonment, and in cases involving a lull there were no duties to be abandoned. Id. Thus, whether there was a lull is not of primary importance in a horseplay case, but instead may present an additional issue. In the present case, the fact that the horseplay did not occur during a lull meant that the case should be routinely analyzed on the basis of whether there had been a deviation amounting to abandonment.
The evidence supports the JCC's finding that the deviation, while "stupid," was neither extensive nor substantial in scope. The conclusions below are, in material part, as follows:
... [I]n the case at bar, the deviation was momentary and in fact it was the claimant's supervisor who committed the act that resulted in claimant's injury.
21. It is clear that the claimant was working until a moment prior to running up the rafters/trusses and tossing the nail at his supervisor. At the moment he tossed the nail there was a minimal deviation from employment which resulted in the accident and injury.
22. While the activity of tossing the nail was not expressly tolerated, it appears to have been impliedly tolerated in light of the fact that it was the supervisor who tossed the nail back at the claimant.
23. It is clear from the testimony of the witnesses that the nail throwing or tossing is an activity that occurs during the course of employment so that it was reasonably foreseeable.
24. Had this been an activity that was not tolerated and not foreseeable, the supervisor could have put an end to it by telling the claimant to stop as opposed to throwing the nail back at the claimant and causing the actual injury.
25. I find that the "horse play" was not substantial enough to constitute abandonment of employment.
Consistent with the cited Florida cases, Larson counsels against placing weight on the seriousness of the results of horseplay. Id. at § 23.63, p. 5-212. Thus, the fact that claimant sustained a serious injury to his eye would not dictate a conclusion that the deviation was substantial.
The evidence also supports the finding that the deviation was not so complete as to result in a wholesale abandonment of claimant's work. The incident was over in seconds and, however misguided, was devised to enliven the workplace. While nail throwing had not been condoned by the employer, there was enough conflicting evidence to permit a conclusion that claimant had not been apprised of any specific rule on the subject. A lack of common sense has not been a complete defense in this area of worker's compensation law. The horseplay rule apparently developed as a result of dissatisfaction with the early narrow conception of industrial injury, i.e., that "[a]berrations in machines could qualify as accidents, but aberrations in fellow-employees could not." Larson, at § 23.10, p. 5-181.
Finally, the evidence supports the finding that nail throwing, while not an everyday event on construction sites, was sufficiently common to be expected occasionally. As pointed out in the order, even claimant's supervisor readily engaged in the action instead of stopping it.
AFFIRMED.
ALLEN and DAVIS, JJ., concur.
NOTES
[1] See also Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193 (Fla. 1972); Evans v. Food Fair Stores, Inc., 313 So.2d 663 (Fla. 1975); Smith Company v. Kates, 395 So.2d 263 (Fla. 1st DCA 1981); Greathead v. Asplundh Tree Expert Co., 473 So.2d 1380 (Fla. 1st DCA 1985); and Publix Supermarkets, Inc. v. Murdock, IRC Order 2-3652 (Jan. 15, 1979).