## Brian Clodgo v. Rentavision, Inc.

[701 A.2d 1044]

No. 96-211

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed July 11, 1997

*Kerry G. Spradlin,* Bennington, for Plaintiff-Appellee.

*Andrew C. Boxer* of *Kiel & Associates,* Springfield, for Defendant-Appellant.

**Gibson, J.** Defendant Rentavision, Inc. appeals a decision of the Commissioner of the Vermont Department of Labor and Industry awarding workers' compensation benefits to claimant Brian Clodgo. Rentavision argues the Commissioner erred in awarding compensation for an injury sustained while claimant and another employee were engaged in horseplay. We reverse.

On July 22, 1995, claimant was working as manager of Rentavision's store in Brattleboro. During a lull between customers, claimant began firing staples with a staple gun at a co-worker, who was sitting on a couch watching television. The co-worker first protested, but then, after claimant had fired twenty or thirty staples at him, fired three staples back at claimant. As claimant ducked, the third staple hit him in the eye.

Claimant eventually reported the injury and filed a claim for workers' compensation benefits. Rentavision contested the award, arguing that claimant was engaged in noncompensable horseplay at

the time of the injury. Following a hearing in March 1996, the Commissioner awarded permanent partial disability and vocational rehabilitation benefits, medical expenses, and attorney's fees and costs. This appeal followed.

■■ This Court's review is limited to questions of law the Commissioner has certified. 21 V.S.A. § 672; *Goodwin v. Fairbanks, Morse & Co.*, 123 Vt. 161, 162, 184 A.2d 220, 221 (1962). Although the Court defers to the Commissioner's interpretation of Vermont's Workers' Compensation Act, we will not affirm an interpretation that is unjust or unreasonable. See *Bedini v. Frost*, 165 Vt. 167, 169, 678 A.2d 893, 894 (1996). We look to the whole statute, its effects and consequences, and the reason and spirit of the law to determine whether the Commissioner's interpretation conflicts with the Legislature's intent. *Spears v. Town of Enosburg*, 153 Vt. 259, 262, 571 A.2d 604, 605-06 (1989).

■ Compensable injuries under Vermont's Workers' Compensation Act are those received "by accident arising out of and in the course of . . . employment." 21 V.S.A. § 618. Although only work-related injuries are compensable, we recognize that "even [employees] of maturer years [will] indulge in a moment's diversion from work to joke with or play a prank upon a fellow [employee]." *Leonbruno v. Champlain Silk Mills*, 128 N.E. 711, 711 (N.Y. 1920). For such a horseplay-related injury to be compensated, however, claimant must show that it both (1) arose out of the employment, and (2) occurred in the course of the employment. 21 V.S.A. § 618; *Miller v. International Business Machs. Corp.*, 161 Vt. 213, 214, 637 A.2d 1072, 1072-73 (1993). A nonparticipant injured by the horseplay of others will nearly always be able to meet this test, see 2 A. Larson & L. Larson, Workers' Compensation Law § 23.61, at 5-199 (1997); cf. *Myott v. Vermont Plywood, Inc.*, 110 Vt. 131, 134-35, 2 A.2d 204, 206 (1938) (nonparticipant compensated for injury), while a participant may or may not recover. See 2 Larson & Larson, *supra*, § 23.20, at 5-182 to 5-183.

■ In setting forth the applicable standard, the Commissioner stated that nothing short of specific intent to injure falls outside the scope of the Act. This overly broad statement was borrowed, however, from a case analyzing the exclusive-remedy aspects of workers' compensation law, made in the context where an employee attempts to prove specific intent by the employer to injure the employee. See *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 441, 417 A.2d 926,

927 (1980). Whether a horseplay participant is entitled to recover usually hinges on whether the injury occurred in the course of employment, which, in turn, depends on the extent of the employee's deviation from work duties. See 2 Larson & Larson, *supra*, §§ 23.20, 23.61, at 5-183, 5-198 to 5-201; cf. *Sekora v. Industrial Comm'n*, 556 N.E.2d 285, 288-89 (Ill. App. Ct. 1990) (claimant riding all-terrain cycle without authorization was substantial deviation from work duties and thus outside course of employment); *Petrie v. General Motors Corp.*, 466 N.W.2d 714, 716 (Mich. Ct. App.) (claimant's actions leading to electrocution found to be substantial deviation from work duties), *appeal denied*, 478 N.W.2d 141 (Mich. 1991).

The question certified for review is whether claimant's horseplay bars him from recovery for the resulting injury under Vermont's Workers' Compensation Act. Rentavision contends the Commissioner misapplied the law in concluding that claimant's horseplay-related injury was compensable. We agree. An injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he or she was injured. *Miller*, 161 Vt. at 214, 637 A.2d at 1073; *Shaw v. Dutton Berry Farm*, 160 Vt. 594, 599, 632 A.2d 18, 20 (1993). Thus, claimant must show that "but for" the employment and his position at work, the injury would not have happened. *Shaw*, 160 Vt. at 599, 632 A.2d at 20 (adopting positional-risk doctrine).[*]

■ Although the accident here would not have happened but for claimant's participation in the horseplay and therefore was not exclusively linked to his employment, it also was not a purely personal risk that would have occurred regardless of his location and activity on that day. He was injured during work hours with a staple gun provided for use on the job, and thus the findings support a causal connection between claimant's work conditions and the injury adequate to conclude that the accident arose out of his employment. See 1 Larson & Larson, *supra*, §§ 7.00-7.30, at 3-14 to 3-16 (when risk is neither distinctly related to employment nor distinctly personal to claimant, trend is to hold employer liable if conditions of employment put claimant in position to be injured by neutral risk).

---

[*] In *Shaw*, a migrant farm worker who was stabbed by a fellow employee in a bunkhouse provided by the employer was awarded compensation because the injury arose out of the employment, as the workers would not have been in the bunkhouse but for their employment. 160 Vt. at 599, 632 A.2d at 20. Whether the injury occurred in the course of the claimant's employment was not raised on appeal. *Id.* at 596, 632 A.2d at 18.

■ Nonetheless, claimant must also show that the injury occurred in the course of the employment. An accident occurs in the course of employment when it was within the period of time the employee was on duty at a place where the employee was reasonably expected to be *while fulfilling the duties of the employment contract. Miller*, 161 Vt. at 215, 637 A.2d at 1073. Thus, while some horseplay among employees during work hours can be expected and is not an automatic bar to compensation, the key inquiry is whether the employee deviated too far from his or her duties. See *Jean Fluet, Inc. v. Harrison*, 652 So. 2d 1209, 1211 (Fla. Dist. Ct. App. 1995).

The Commissioner must therefore consider (1) the extent and seriousness of the deviation; (2) the completeness of the deviation (i.e., whether the activity was commingled with performance of a work duty or was a complete abandonment of duty); (3) the extent to which the activity had become an accepted part of the employment; and (4) the extent to which the nature of the employment may be expected to include some horseplay. See 2 Larson & Larson, *supra*, § 23.00, at 5-178; *Petrie*, 466 N.W.2d at 716. The Commissioner found that although shooting staples was common among employees, such activity was not considered acceptable behavior by Rentavision. She made no finding concerning whether Rentavision knew that staple-shooting occurred at work, but did find that claimant made material misrepresentations of fact designed to avoid an inference of horseplay or inappropriate behavior in order that he might obtain workers' compensation benefits. Claimant makes no showing that shooting staples at fellow employees was an accepted part of claimant's employment or furthered Rentavision's interests. Cf. *Kenney v. Rockingham Sch. Dist.*, 123 Vt. 344, 347-48, 190 A.2d 702, 704 (1963) (holding that injury arose out of and in the course of employment where claimant teacher sustained injury while voluntarily enrolled in course to improve teaching skills).

■ The facts show that the accident was unrelated to any legitimate use of the staplers at the time, indicating there was no commingling of the horseplay with work duties. The Commissioner focused on the slack time inherent in claimant's job, but this factor alone is not dispositive. Although some horseplay was reasonably to be expected during idle periods between customers, the obvious dangerousness of shooting staples at fellow employees and the absence of connection between duties as a salesperson and the horseplay events indicates the accident occurred during a substantial

deviation from work duties. Therefore, we reverse the Commissioner's award.

*Reversed.*

**Morse, J.,** dissenting. I respectfully dissent. The Court reverses a decision of the Commissioner of the Vermont Department of Labor and Industry awarding workers' compensation benefits for an injury sustained while claimant was engaged in "horseplay" with another employee. The basic criteria of analysis utilized by the Commissioner are not disputed by the Court. Rather, the Court disagrees with the Commissioner's application of the law to the facts, holding that the horseplay constituted a substantial deviation from the course of employment and therefore was not compensable.

Under settled standards of review, the Court has stepped out of its proper role. The Court is not to second-guess the Commissioner's conclusions. The Court's duty, rather, is to affirm the judgment if the facts fairly and reasonably support it. See *Kenney v. Rockingham Sch. Dist.*, 123 Vt. 344, 348, 190 A.2d 702, 705 (1963). Where reasonable minds might honestly disagree about whether the injury was sustained in the course of employment, we must defer to the judgment of the Commissioner. See *id.*

As noted, the Court does not take issue with the general legal standard adopted and applied by the Commissioner. Under that standard, when a claimant's injury occurs in the course of horseplay and the claimant was an active participant, the claimant must not have "substantially deviated" from the work if the injury is to be considered sustained in the course of employment. See 2 A. Larson & L. Larson, Workers' Compensation Law § 23.20, at 5-183 (1997). The criteria used in making this determination are as follows: (1) the extent and seriousness of the deviation; (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty); (3) the extent to which the practice of horseplay had become an accepted part of the employment; and (4) the extent to which the nature of the employment may be expected to include some such horseplay. *Id.* § 23.00, at 5-178.

With respect to the extent and seriousness of the deviation, as well as its completeness, the Commissioner found that claimant and his fellow employee had completed virtually all the work that needed to be done in the absence of customers and that business was very slow that day. When the injury occurred, claimant and his fellow employee were in a period of enforced idleness while they waited for customers. They were not actively pursuing any specific tasks and were passing

the time as required by their jobs. As Larson points out, when there is a lull in work, there are no duties to abandon. During such periods, the deviation can be more substantial than at other times when an employee may be actively pursuing a task directly related to employment. *Id.* § 23.65, at 5-219, 5-226 to 5-227. The Commissioner could thus reasonably conclude that the horseplay in this case did not constitute an abandonment of duties or even a serious deviation from the demands of work at that time of day.

Regarding the extent to which such horseplay had become an accepted activity, the Commissioner found that it had been a commonplace occurrence at the store. Although the executive assistant to defendant's president testified that claimant's horseplay was not considered acceptable behavior, he acknowledged that an employee would not be fired for engaging in such activity. The Commissioner thus reasonably concluded that the horseplay as engaged in by claimant, while not condoned by the employer, was a tacit part of employment. See *Jean Fluet, Inc. v. Harrison*, 652 So. 2d 1209, 1212 (Fla. Dist. Ct. App. 1995) (finding that activity of "nail tossing," though not expressly tolerated, was sufficiently commonplace to be impliedly tolerated); *Industrial Comm'r v. McCarthy*, 68 N.E.2d 434, 435-36 (N.Y. 1946) (finding that particular horseplay engaged in by waiters was more or less customary and had become part and parcel of employment).

Finally, the Commissioner could reasonably conclude that work in a retail establishment might be expected to include such horseplay. The Commissioner characterized the claimant and his fellow employee as "suffering through a very slow day in a retail establishment," having quoted Larson as noting that "idleness breeds mischief, so that if idleness is a fixture of the employment, its handmaiden mischief is also." (Quoting 2 Larson & Larson, *supra*, § 23.65, at 5-219.) Retail work necessitates passing time if there are no customers demanding attention. "Employers, whose work require[s] that men wait upon the job for work conditions, ought not to be heard to say that an accident, occurring out of the very conditions presented by the required waiting, is not compensatory." *Gillmore v. Ring Constr. Co.*, 61 S.W.2d 764, 766 (Mo. Ct. App. 1933). The Commissioner's determination that the nature of the business lent itself to the horseplay in question was fairly and reasonably supported by the facts.

In sum, the Commissioner applied the proper legal standard to the facts, and the evidence fairly and reasonably supports the Commis-

sioner's conclusion, a conclusion that, I might add, is a reasonable one given the policy of the law to help alleviate the consequences of injury in the workplace. It is not our prerogative to reverse the Commissioner's decision merely because we would have reached a different conclusion. We must, in these circumstances, defer to the judgment of the administrative agency charged with the initial decision-making responsibility. See *Kenney*, 123 Vt. at 348, 190 A.2d at 704-05. Therefore, I would affirm the Commissioner's award of compensation.