EATON, J., dissenting.
¶ 56. In this case, the plurality rewards Chittenden Central Supervisory Union for its largess in affording a student teacher, Catherine Lyons, the opportunity to gain classroom educational experience by holding that she was an employee of CCSU, thereby making CCSU responsible to provide her workers' compensation benefits. The plurality holds that claimant was CCSU's employee because she received remuneration from the school as a student teacher. I disagree for several reasons.
¶ 57. First, I do not believe an employer-employee relationship exists in the absence of the "employee" receiving any wages; whatever benefits claimant received from her student teaching experience were not quantifiable remuneration, and thus were not wages. Second, any benefits claimant garnered from her student teaching experience were not received from CCSU, and thus do not constitute "wages" under the Workers' Compensation Act. Finally, there is no evidence that claimant and CCSU intended to enter the type of employer-employee relationship the plurality creates here. Imposing this type of relationship on the parties would have negative implications for fault-based tort claims and a chilling effect on future student teaching opportunities.
*569 Thus, I cannot agree that CCSU was claimant's "employer," and would affirm the Department of Labor Commissioner's thoughtful decision denying compensation benefits.
¶ 58. The plurality avoids answering a central issue in this case-whether an employment relationship can exist in the absence of any remuneration-by instead finding that the experiential and professional opportunity CCSU afforded claimant in allowing her to student teach in their facility constituted remuneration sufficient to create an employment relationship. As the plurality notes, this determination is purely a question of law. Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 23, 182 Vt. 349, 940 A.2d 674. As the plurality downplays, the determination made by the Commissioner, directly contrary to the plurality's position, is entitled to be upheld "absent a compelling indication of error." Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 18, 194 Vt. 12, 72 A.3d 346. I find no error in the Commissioner's determination that there was no employment relationship under the facts of this case and certainly nothing that compels the different result the plurality reaches.
¶ 59. As a starting point, decisions such as the one made by the Commissioner here are within the expertise of the Department of Labor; are presumed to be correct, valid, and reasonable; and should be overturned only upon a clear showing to the contrary. Wood v. Fletcher Allen Health Care, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999) ("The Commissioner's decision is presumed valid, to be overturned only if there is a clear showing to the contrary. We must defer to the Commissioner's construction of the workers' compensation statute absent a compelling indication of error." (emphases added) (citation omitted)); see ante, ¶13 (affirming deferential standard Court applies to decisions of administrative agencies, such as Department). At most, the plurality opinion merely reaches a different outcome from the Commissioner; it fails to establish either that the plurality result is compelled by the Department's clear error, or that the presumption traditionally afforded to the Department's interpretation of the applicable statutes is incorrect or unreasonable. The plurality's decision pays lip service to the deference we have historically afforded to the Commissioner, but falls far short of showing the Commissioner's decision that no employment relationship existed was clearly wrong and in need of remand.
¶ 60. I fully believe, as did the Commissioner, that remuneration of some kind is necessary to create an employer-employee relationship and thus an entitlement to workers' compensation benefits.[14] Workers' compensation is a system that has, as a primary component, wage replacement for injured workers. The Commissioner correctly recognized the restoration of wages "is the very essence of the protection that the system affords." The plurality leaves that question for another day, but finds that remuneration from CCSU existed and that an employer-employee relationship was created. I disagree.
¶ 61. We have rightly held that no employee should be wrongly excluded from benefits. Montgomery v. Brinver Corp., 142 Vt. 461, 463, 457 A.2d 644, 646 (1983). But that recognition does not give this Court license to apply a flexible standard to the determination of employment status.
*570 We should not construe the Act unreasonably or in an unwarranted way. Rothfarb v. Camp Awanee, Inc., 116 Vt. 172, 180, 71 A.2d 569, 574 (1950), overruled on other grounds by Shaw v. Dutton Berry Farm, 160 Vt. 594, 632 A.2d 18 (1993). The construction of the Act applied by the plurality is both unreasonable and unwarranted, creating a fictive remuneration and attributing it to a nonconsenting employer, resulting in an employment relationship where the parties did not contemplate it and the facts do not support it.
¶ 62. " 'Wages' includes bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration." 21 V.S.A. § 601(13) (emphases added). Thus, things other than cash received from the employer can nonetheless be wages if: (1) they are capable of being estimated in money, and (2) are received as part of the employee's remuneration. This Court has concluded that "wages" as used in the Act is synonymous with "earnings." Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d 795, 797 (1964) ("Under the legislative definition of 'wages' ... the term ... is synonymous with 'earnings' .... "). The "other advantages" which the plurality uses as the basis to support the employer-employee relationship are only wages if they are earnings as part of the employee's remuneration. In Lydy v. Trustaff, Inc./Wausau Insurance Co., we recognized that "[t]o remunerate is to 'pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.' " 2013 VT 44, ¶ 12, 194 Vt. 165, 76 A.3d 150 (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). Lyons's remuneration can be only one of two things, the value of her student teaching experience or the value of the state teaching certification. Neither are wages from CCSU.
¶ 63. The plurality parses the "benefits" Lyons received from student teaching to establish remuneration, but primarily bases its decision finding her to be CCSU's employee on two points: (1) receipt of an educational experience is tantamount to remuneration, going so far as to characterize the teaching experience and mentoring as payment, ante, ¶19; and (2) the ability to put a monetary value on claimant's state teaching certification satisfies the statutory requirement for quantifiable remuneration. Neither point withstands scrutiny. Experience is not remuneration.
¶ 64. The plurality stretches the scope of "remuneration" to create an employer-employee relationship that was not contemplated under the Workers' Compensation Act. Section 601(14) of the Workers' Compensation Act defines worker and employee as follows: "an individual who has entered into the employment of, or works under contract of service or apprenticeship with, an employer." 21 V.S.A. § 601(14). In straining to create an employment relationship, the plurality notes the various titles given to the position occupied by claimant, including preservice teacher, student teacher, and intern.[15] Respectfully, it does not matter what title is given to claimant's position under her agreement; she had no earnings in her relationship with CCSU, and thus cannot satisfy the requirements of 21 V.S.A. § 601(14). Whatever title is bestowed upon claimant's student teaching position, she was there to complete her educational goal of obtaining *571 teaching certification from the state. Claimant was in the CCSU building as a student, having paid tuition to UVEI, and was part of UVEI's teacher internship program. She was not there for any other purpose.
¶ 65. Claimant was not receiving compensation of any kind from CCSU for her efforts as a student teacher; she had no earnings. Indeed, her efforts in her relationship with CCSU were not in connection with employment at all; she was in the school solely to fulfill her educational desire to achieve teaching certification through the student teacher process as a UVEI student.[16] On UVEI's promise of oversight, CCSU gratuitously hosted claimant in its classrooms, and claimant received a hands-on learning experience as the benefit of her tuition payment. Whatever benefits claimant gained from student teaching were not wages under the Act, earnings from working, or remuneration. These benefits were just what she expected to receive and what she fully paid for through her enrollment at UVEI.
¶ 66. The plurality argues that, if the monetary value of claimant's educational benefits from student teaching can be estimated, then the student teaching experience becomes remuneration. See ante, ¶¶19-22. This logic mischaracterizes the relationship between claimant, UVEI, and CCSU. Claimant entered into an agreement with UVEI to satisfy competency and student teaching requirements in the pursuit of licensure as a teacher. Claimant paid tuition to UVEI to participate in their program and also paid a placement fee to UVEI to receive a voucher from them, enabling her to student teach in a classroom without licensure. See ante, ¶ 3. Even if the relationship between UVEI and claimant has a quantifiable monetary value-the cost of her tuition and fee-the relationship between Lyons and CCSU does not. Claimant paid UVEI for a product (preparation for licensure) and services (facilitating and monitoring her relationship with CCSU). At no point did claimant receive payment of any kind from CCSU; she had no earnings from them. She was neither working for a wage nor providing CCSU services; rather, she was receiving the benefit of her contractual bargain with UVEI while on site at CCSU, experience in preparation for licensure. It cannot be seriously contended that, before she was injured, claimant would have considered her student teaching experience to be earnings for which she might have a taxable consequence or that CCSU was required to report claimant as having earnings. We should recognize the relationship for what it was: claimant was a student of UVEI, placed in the CCSU system at CCSU's consent. She was no more the employee of CCSU than a student taking college courses is an employee of the school providing them.
¶ 67. Other facts beside the lack of remuneration support the Commissioner's determination that claimant was not CCSU's employee. The plurality recognizes CCSU's clearly expressed intention that no employment relationship was created through the student teacher position, but then discounts it by holding that that intention cannot control whether a student teacher meets the statutory requirements *572 to be an employee. While I agree that CCSU's intention is not controlling, I disagree that CCSU's intention is not a valid consideration in the employment determination.
¶ 68. Whether an employee relationship exists is a mutual undertaking between employer and employee, not a unilateral one. The Commissioner quoted Professor Larson in its decision:
Compensation law ... is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.
3 L. Larson, Larson's Workers' Compensation § 64.01, at 64-2 (M. Bender rev. ed. 2010) (citations omitted).
¶ 69. The plurality recites claimant's responsibilities as a student teacher to support its determination that she was CCSU's employee, but does not give like discussion to the many salient facts in support of the Commissioner's determination that she was not CCSU's employee. Examination of the student teacher position reveals the following undisputed facts: claimant was receiving training to become a teacher, for which she was paying UVEI $15,000 in tuition plus a placement fee. At the time of this injury claimant was a student, not a teacher. No representative of CCSU ever told claimant that she was their employee; no document provided by CCSU ever represented that she was their employee; and the documents she received from UVEI expressly informed her that she was not an employee of either UVEI or the school in which she was placed. She received no wages or stipend from CCSU and there is no evidence she ever expected to receive any. She was not required to fill out a W-4 or an I-9 form to student teach. As a student teacher, she was prohibited from making entries into the students' permanent records, and she could not contact a student's parent without the permission of the classroom teacher. She was not eligible to join the teacher's union. She was not eligible for health care benefits. She was not eligible to participate in the teacher's retirement plan. Further, in her role as a student teacher, claimant was neither replacing a teaching position nor filling an identified need for one within CCSU. These facts also amply support the Commissioner's determination that claimant was not CCSU's employee.
¶ 70. It is important to emphasize the burden of proof to establish the employment relationship with CCSU rested with claimant; it was not on CCSU to disprove one. See Goodwin v. Fairbanks, Morse & Co., 123 Vt. 161, 166, 184 A.2d 220, 223 (1962) ("That the findings of the commissioner are binding on this Court if sufficiently supported by evidence is beyond question; and it is equally true that the burden is on the claimant to establish the facts essential to the right asserted."). I do not believe it can be seriously contended that Lyons, as a tuition paying student of UVEI, thought she was an employee of CCSU in light of the facts outlined above. She was no more the employee of CCSU than any of the dozens of student teachers placed annually into Vermont public school districts through college student teaching courses are employees of the school districts who accept them into their schools.
*573 ¶ 71. The plurality relies upon two cases from other jurisdictions in support of its outcome- Betts v. Ann Arbor Public Schools, 403 Mich. 507, 271 N.W.2d 498, 500-01 (1978), and Walls v. North Mississippi Medical Center, 568 So.2d 712, 718 (Miss. 1990) -both of which are easily distinguishable. In Betts, the Supreme Court of Michigan held that a student teacher was an employee because he received remuneration from his site school in the form of training and college credits in preparation for certification. The court based its holding on the Michigan Workers' Disability Compensation Act, which defines a public "employee" as " '[e]very person in the service of the state or of any county, city, township, village or school district, [u]nder any appointment, or contract of hire, express or implied, oral or written.' " Betts, 271 N.W.2d at 499 (quoting M.C.L. § 418(161)(1)(a)). Michigan's public "employee" statute, unlike Vermont's, applies to every person in the service of a school district under an appointment or an express or implied contract of hire. Vermont's statute, 21 V.S.A. § 601(12) contains no similar provision, but rather lists specific public employments, applying to teachers only as defined in 16 V.S.A. § 1931, a definition which does not include student teachers. The Michigan court found Betts had both an appointment and an implied contract of hire sufficient to render him an employee under their public "employee" statute. Because of the significant statutory differences, Betts provides no support for the plurality's position.
¶ 72. Similarly, in Walls, the Supreme Court of Mississippi found that a student nurse was a hospital employee because she was an apprentice and she received remuneration in the form of "learning the 'business' of the hospital necessary to acquire her license as an LPN." Walls, 568 So.2d at 718. The Mississippi court also grounded its decision in the "unique history and purpose" of educational programs for "interns, residents and clinical fellows in hospitals affiliated with medical schools, which ... are fully accredited by the Council on Medical Education of the American Medical Association and by various specialty boards." Id. The court clearly considered trainees in the medical field "not to be primarily students, but rather to be apprenticeship employees within the meaning of the Workmen's Compensation Act." Id. Here, the plurality does not rely on the theory that claimant was CCSU's apprentice under 21 V.S.A. § 601(14), and the unique features of medical internship programs are inapplicable in a school setting.
¶ 73. However, there is ample and persuasive authority to contradict the plurality's holding. In the more recent case, Orange County School Board v. Powers, 959 So.2d 370, 371 (Fla. Dist. Ct. App. 2007), the court found that a university student working as an unpaid intern in a public school as part of her degree program was not an employee of the school board for workers' compensation purposes, despite a Florida statute providing:
A student who is enrolled in a state-approved teacher preparation program in [an] ... educational institution ... and who is jointly assigned ... to perform a clinical field experience under the direction of a regularly employed and certified educator shall, while serving such supervised clinical field experience, be accorded the same protection of law as that accorded to the certified educator except for the right to bargain collectively as an employee of the district school board.
Fla. Stat. § 1012.39(3) (emphasis added). The court recognized that the student was at the school, like here, for purposes of completing her educational course work, not as an employee.
*574 ¶ 74. Similarly, compensation benefits were denied in Dustin v. DHCI Home Health Services, Inc., 95-1989 (La. App. 1 Cir. 5/10/96), 673 So.2d 356 (concluding that student of commercial school receiving clinical training in a medical center as part of his education, who contracted HIV, was not employee of the medical center); Salvation Army v. Mathews, 847 S.W.2d 751 (Ky. Ct. App. 1993) (finding that student nurse injured in slip-and-fall was unremunerated trainee, not employee or apprentice for compensation purposes); Board of Education v. IndustrialCommission, 53 Ill.2d 167, 290 N.E.2d 247 (1972) (finding that student completing volunteer work in public school as part of her academic training for degree in elementary education was not employee of Board of Education when injured in slip and fall); and Henderson v. Jennie Edmundson Hospital, 178 N.W.2d 429 (Iowa 1970) (holding that nurse's aide trainee who twisted her back was not employee of hospital where she received no wage and had not been promised a job at the end of her training). We should follow these decisions.
¶ 75. The other potential source for remuneration, the plurality's attempt to rely on the value of the teaching certification, also suffers from a fatal flaw. Even if we assume the benefits claimant received from pursuing her certification by student teaching were "other advantages" that were part of her remuneration, to constitute "wages" the advantage must be received "from the employer." 21 V.S.A. § 601(13).
¶ 76. The Commissioner found that receipt of state licensure was not capable of monetary valuation, and therefore was not wages under the Act. The plurality disagrees with that conclusion, but does not explain how, even if the certification is capable of monetary valuation, the certification for licensure awarded by the state is "other advantages ... which the employee receives from the employer as part of his or her remuneration." Id. (emphasis added). The inability to monetarily value state licensure would be one reason it cannot be "wages" under 21 V.S.A. § 601(13). The concurrence has a deep skepticism that the value of the training can be estimated in money. I share that skepticism and then some. The plurality uses the "student teaching experience" as a means to find remuneration, either from the training she received or the opportunity for licensure. But rather than quibble over whether there is a basis to determine a monetary value of the training or licensure, there is an additional fundamental problem with using either to support remuneration by CCSU. Regardless of whether the value of training or certification can be estimated in monetary terms, claimant could not receive, and was not intending or expecting to receive, her teaching certification from CCSU. Whatever the value of the certification, or the training leading to it may be, it is the state, not CCSU, that has the authority to grant claimant certification. The plurality completely overlooks that any "value" claimant received from student teaching in terms of obtaining teaching certification was not conveyed by CCSU. The teaching certification was a benefit to be conferred upon her by the state; it was not an "advantage" she received from CCSU. Therefore, even if a monetary value can be assigned to claimant's certification, the benefits are still not "wages" as defined in the Act because they did not come from her purported "employer," CCSU.[17]
*575 ¶ 77. The Commissioner considered the apprenticeship issue in granting summary judgment for CCSU, concluding that remuneration was still necessary even in an apprenticeship. The concurrence disagrees with this conclusion, but does not establish why the Commissioner's interpretation of the term is compellingly wrong. Here again, we have long recognized the deference afforded to the Commissioner in her initial interpretation of the compensation statutes. While our review of questions of law is de novo, nonetheless the deference afforded to the Commissioner's interpretation of statutory terms still plays an important role. Cyr v. McDermott's, Inc., 2010 VT 19, ¶ 13, 187 Vt. 392, 996 A.2d 709. Because "the Commissioner has been entrusted by the Legislature with the administration of the workers' compensation program, we owe substantial deference to her initial interpretation and application of" the workers' compensation statutes. Letourneau v. A.N. Deringer/Wausau Ins. Co., 2008 VT 106, ¶ 8, 184 Vt. 422, 966 A.2d 133. Therefore, while we require the Commissioner's conclusions to reflect "the correct interpretation of the law," we will uphold the Commissioner's construction of the workers' compensation statutes "absent a compelling indication of error." Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (quotations omitted). The Commissioner's interpretation of the apprenticeship provision of 21 VSA § 601(14) was a reasonable one and we should follow it.
¶ 78. The concurrence decries the dissent for ignoring the statutory definition of employee, declaring the "approach ignores the express terms of Vermont's workers' compensation statute and fundamental principles of workers' compensation law, which clearly establish that a contractual, common law employer-employee relationship is not required between a statutory employer and employee." Ante, ¶51. It then cites to the language of 21 V.S.A. § 601(3), which creates an employment relationship in the "owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." The concurrence asserts the statutory definition of employer encompasses the situation presented here, citing to prior decisions of this Court. The concurrence overlooks a critical requirement of the statute, and a factor present in all of the cases it cites, which is entirely absent here. The definition of statutory employer expands the common-law concept of employer to encompass those who are "not the direct employer of the workers there employed." Ante, ¶51. But that expansive definition still requires a direct employment relationship with someone. In all the cases cited by the concurrence to support its statutory employer analysis, the injured worker was working under a contract of hire by an entity and deemed to be the statutory employer of another. Edson v. State, 2003 VT 32, 175 Vt. 330, 830 A.2d 671 ; Vella v. Hartford Vt. Acquisitions, Inc., 2003 VT 108, 176 Vt. 151, 838 A.2d 126 ; Candido v. Polymers, Inc., 166 Vt. 15, 687 A.2d 476 (1996). Absent an employment relationship, *576 either direct or indirect, there is no entitlement to compensation benefits. Claimant did not have an employment relationship with either CCSU or UVEI.
¶ 79. There are potential implications from this decision that cannot be ignored. First, as the Commissioner rightly noted, due to the exclusive remedy provisions of workers' compensation, there is the danger of creating precedent establishing an employment relationship where neither party likely intended it. The entitlement to compensation benefits serves at the same time to prevent claimant from filing nearly all fault-based claims against CCSU. The plurality's employment determination may serve to benefit claimant in this instance but work a profound hardship on the next injured student teacher by barring a tort claim against the school district due to the exclusive remedy provision of the Workers' Compensation Act, 21 V.S.A. § 622. We have recognized the significant impact the receipt of compensation benefits rather than a tort recovery may have. Wolfe v. Yudichak, 153 Vt. 235, 571 A.2d 592 (1989). Thus, we should expand the employer-employee relationship and its concomitant exclusive remedy provision advisedly.[18]
¶ 80. Aside from the disqualification from common law remedies that attend the plurality's holding, there is another important public policy consideration raised by this decision. In making a student teacher eligible for workers' compensation benefits, the plurality ignores the impact such a determination may have on a school district's willingness to allow student teachers into their buildings. Student teachers are not a way for school districts to fill teaching positions at no cost to them. On the contrary, student teachers require supervision and mentoring by certified teachers, which those teachers agree to take on, in addition to their other teaching duties, for no additional remuneration. The decision to accept student teachers is, as the Commissioner correctly found, both a service and a detriment for the placement school. The result of this decision may well be that school districts, who are under no obligation to take on student teachers in the first instance, decide not to allow them into their schools. The reduction in student teaching opportunities, should it occur, will be an unfortunate legacy of this decision.
¶ 81. I freely acknowledge that the Workers' Compensation Act has benevolent objectives, is remedial in nature, and is to be liberally construed. Montgomery, 142 Vt. at 463, 457 A.2d at 646. But a liberal construction does not mean an unfair one. "Whatever virtue may arise from being liberal, I feel sure that it is less than that from being fair-minded." Orvis v. Hutchins, 123 Vt. 18, 25, 179 A.2d 470, 475 (1962) (Hurlburd, J., dissenting). Virtually since the Act's inception, it has been recognized that the Workers' Compensation Act must safeguard the rights of both employers and employees and that the provisions of the law as written must be given force. Petraska v. Nat'l Acme Co., 95 Vt. 76, 113 A. 536 (1921). I believe the fair outcome here, consistent with that duty to safeguard the rights of both employers and employees, and a fair reading of the definition of "wages" under the Act, is that this is not a compensable injury because claimant received no remuneration from CCSU and therefore was not an employee of CCSU and, accordingly, her injury did not arise out of and in the course of employment with CCSU.
*577 ¶ 82. I come to that conclusion even without deferring to the Commissioner's expertise. When we add to the mix the deference that the Commissioner's decision is clearly entitled to receive, along with a recognition that the burden of proof on this issue was on claimant, the outcome should not be in any doubt. The plurality acknowledges the "grand bargain" underlying workers' compensation. Yet this Court's decisions continue to chip away at the bargain so that only one side of it, the employer's liability without regard to fault, would be recognizable today to those who crafted it. The other side of the bargain, a liability for employers that is limited and determinate, has become a vacuous mantra. I would affirm the Commissioner's decision, leaving claimant free to pursue a fault-based claim against CCSU, or others, should a basis exist to do so. Accordingly, I dissent.
¶ 83. I am authorized to state that Justice Skoglund joins this dissent.

The plurality is incorrect that the Commissioner found there was remuneration in this case, ante, ¶16. The Commissioner found that "[b]ecause the key element of actual or expected remuneration is missing, I therefore conclude that no 'contract of service' sufficient to create an employment relationship existed between them."

The plurality does not and cannot conclude that claimant was a teacher because teachers are afforded compensation benefits as public employees under the Workers' Compensation Act, but a "teacher" is only as the term is defined in 16 V.S.A. § 1931, a definition that does not include student teachers. 21 V.S.A. § 601(12)(H).

Under the plurality's rationale, it would appear that a student in any prerequisite course for licensure would be considered an employee of the organization providing the training. Is a student of a driving school injured in an auto accident an employee of the school because he or she is being mentored to obtain a driver's license? Similarly, the plurality's position appears to render the value of the "teaching experience" as constituting "wages" that could support a claim for unemployment benefits if the requisites of an unemployment claim were otherwise met. 21 V.S.A. § 1301(12).

The plurality asserts that the licensure claimant planned to receive can be quantified and the loss of the educational program equates to the loss of the license to practice a profession. The plurality never explains how this value should be calculated or whether it could be quantified as weekly wages. Additionally, the plurality bases a lost wage upon a licensure that had not occurred at the time of injury and would not have occurred absent the injury until sometime in the future, if at all. Thus, I remain unconvinced that anticipated state licensure has a quantifiable value sufficient to prove remuneration in the workers' compensation context.

This is not to suggest that the amount of employer fault or the extent of injuries should play any role in the determination of whether workers' compensation benefits apply. To the extent the plurality suggests otherwise, if it does, I disagree.