NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 86

No. 2016-332

| Kimberly Haller | Supreme Court |
|---|---|
| | |
| | On Appeal from |
| v. | Commissioner of Labor |
| | |
| Champlain College | February Term, 2017 |

Anne M. Noonan, Commissioner

William B. Skiff, Burlington, for Plaintiff-Appellee.

J. Justin Sluka and Alycia M. Sanders of Ellis Boxer & Blake PLLC, Springfield, for
  Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **ROBINSON, J.**    The question in this workers' compensation case is whether employer Champlain College is obligated to include in claimant Kimberly Haller's average weekly wage calculation the value of tuition-free college credits she earned in accordance with employer's graduate tuition policy.  On cross-motions for summary judgment, the Commissioner of the Department of Labor concluded that the tuition benefits provided by employer and used by claimant was an "other advantage" that constituted part of claimant's wages.  21 V.S.A. § 601(13).  We agree and affirm.

¶ 2.    The relevant facts here are undisputed.  At all times relevant to these proceedings claimant was an employee of Champlain College for purposes of Vermont's workers'

compensation laws. On March 10, 2014, claimant suffered a work-related injury, which employer has accepted. At the time of her injury, claimant was employed as employer's Recruitment Director.

¶ 3. Since May 2012, claimant had taken numerous courses at Champlain College pursuant to its "Tuition Benefits" policy. That policy allows college employees, their spouses, and eligible dependent children to take undergraduate and graduate courses on a space-available basis, tuition free. In relevant part, section 4.3.1 of employer's Tuition Benefits policy provides[1]:

> Employees of the College may normally take for-credit Graduate courses tuition-free on a "space-available" basis. If an individual is matriculating in a degree program every effort will be made to accommodate that student in the current term and if space prohibits then the student will be seated in the following terms for that course . . . .
>
> Books, residency costs, labs, fees and other non-tuition expenses are not paid for by the College. IRS regulations determine the maximum amount of tuition value, per calendar year, that need not be reported as taxable wages. Note: IRS regulations stipulate that tuition benefits valued at over $5,250 per calendar year are to be reported as taxable wages on the employee's W-2 form unless the amount is excludable as a "working condition fringe."
>
> Champlain College pays the employer FICA taxes on taxable wages. The employee is responsible for all other taxes. Employee taxes are deducted during normal payroll cycles. This benefit is not available to retirees.

¶ 4. During the twenty-six weeks prior to her work-related injury, claimant completed ten and one half credits of classwork at Champlain College. She paid no money for these course credits. Claimant considered the free tuition policy to be one of the benefits of working for employer as it allowed her to work toward, and earn, a graduate degree without paying any tuition.

---

[1] Employer's Tuition Benefits policy contains separate provisions governing undergraduate tuition for employees, undergraduate tuition for employees' family members, graduate tuition for family members, tuition assistance for study at other accredited institutions, and partial tuition reimbursement for studies toward a doctoral degree. Because these other provisions are not directly implicated in this case, we do not further describe or reproduce them.

This free tuition was a substantial financial benefit to claimant and was one of the reasons she chose to work for employer.

¶ 5. The issue presented to the Commissioner on cross-motions for summary judgment was whether the value of these tuition benefits should be included in the calculation of claimant's average weekly wage for the purposes of her permanent partial disability benefit.[2] "Wages" are defined to include "bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration." 21 V.S.A. § 601(13). The specific issue in this case is whether claimant's tuition benefits fall within "other advantages which can be estimated in money and which the employee receives from the employer as part of his or her remuneration." Id.

¶ 6. In analyzing this question of first impression, the Commissioner first distinguished this Court's recent decision that the value of employer-provided health insurance benefits should not be included in the calculation of wages. See Lydy v. Trustaff, Inc., 2013 VT 44, 194 Vt. 165, 76 A.3d 150. In determining whether the tuition benefit should be included in the wage calculation, the Commissioner considered three questions gleaned from prior Department decisions: First, is the benefit a "significant part" of the compensation? Second, does the employee derive true value from the offered benefit or is it a benefit that means little to the employee except as an enhancement to an average weekly wage? And third, is the value of the benefit reasonably subject to objective valuation?

_____

[2] Claimant concedes that the value of the benefit should not be included in the average weekly wage calculation for the purposes of temporary total disability benefits because employer continued to provide the benefit during her period of temporary total disability benefits. Workers' Compensation Rules 8.1130, Code of Vt. Rules 24 010 003, http://www.lexisnexis.com/hottopics/codeofvtrules. See, e.g., Donovan v. AMN Health Care, No. 12-11WC (May 26, 2011), http://labor.vermont.gov/wordpress/wpcontent/uploads// DonovanMSJ.pdf [https://perma.cc/4A6H-SRP5] (recognizing that value of a benefit may be included in average weekly wage calculation for purposes of permanent partial disability benefits but excluded from calculation for purposes of temporary total disability benefits if claimant continues to receive benefit during period of temporary total disability).

3

¶ 7. Noting the remedial nature of the workers' compensation laws, the Commissioner answered the above questions in the affirmative. The free tuition was a substantial benefit to claimant and was one of the reasons she worked at Champlain College. She derived true value from the program; she had taken advantage of it from 2012 until 2014 and was using it to acquire a master's degree. And, finally, the benefit was subject to simple valuation.[3] The Commissioner explained that including the value of the free tuition in claimant's wage calculation would not upset the "delicate balance" struck between employees and employers in the workers' compensation setting and concluded that the free tuition benefit claimant received qualified as an "other advantage" that can be easily estimated and that was paid to her as remuneration for her work.

¶ 8. Employer appealed, and the Commissioner certified for our review the question of whether employer was obligated to include in claimant's average weekly wage calculation the value of tuition-free college credits earned by claimant in accordance with its employee tuition policy.

¶ 9. On appeal, employer argues first and foremost that this Court's recent ruling that employer-provided health insurance benefits are not "other advantages" included within the definition of wages dictates the outcome of this case. See Lydy, 2013 VT 44. Employer further argues that the benefit in question did not amount to "remuneration," 21 V.S.A. § 601(13), that the Commissioner's determination that the tuition benefit was capable of simple valuation was based on a mistake of fact, and that the Commissioner's decision will upset the "delicate balancing" between an injured worker's right to compensation and an employer's right to limited and determinate liability. Lydy, 2013 VT 44, ¶ 19.

---

[3] In reaching this conclusion the Commissioner referred to a section of employer's tuition benefit program providing for tuition assistance at other accredited institutions besides Champlain College. Although that provision does not directly apply in this case, for the reasons set forth below, the Commissioner's reasoning applies as fully to the section at issue in this case.

¶ 10. In construing a statute, "[o]ur paramount goal . . . is to give effect to the Legislature's intent." State v. Deyo, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249. In interpreting the workers' compensation statute, "we will defer to the Commissioner's construction of the Workers' Compensation Act, absent a compelling indication of error." Lydy, 2013 VT 44, ¶ 4 (quotation omitted). Our deference is not unlimited, however, and "we will not affirm an interpretation that is unjust or unreasonable." Clodgo v. Rentavision, Inc., 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997). Moreover, in reviewing the Commissioner's determination, we must be mindful that our workers' compensation laws are "remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary." St. Paul Fire & Marine Ins. Co. v. Surdam, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991).

¶ 11. We conclude there was no compelling indication of error in the Commissioner's determination for several reasons. First, this case is different from Lydy in several notable and significant ways. While our analysis in Lydy may shed some light on the applicable standards, Lydy is in no way controlling in this case. Second, the Commissioner's analysis gives effect to the language of the workers' compensation statute and is consistent with that law's purposes. Third, the Commissioner's decision is consistent with the Department's own caselaw on the subject.

¶ 12. This Court's decision in Lydy does not control the outcome of this case. In Lydy, the Court, in a 3-2 decision, concluded that employer-provided health insurance benefits were not an "other advantage" received as part of the employee's remuneration. 2013 VT 44, ¶ 19. Several considerations that do not apply here weighed heavily in the Court's analysis in that case.

¶ 13. In Lydy, the Commissioner ruled that the health insurance benefit was not an "other advantage" for the purposes of the wage calculation. Id. ¶ 1. The deference we afford to the Commissioner's construction of the workers' compensation laws, absent a compelling indication of error, supported exclusion of health insurance benefits from the definition of wages in Lydy,

5

but supports <u>inclusion</u> of the free tuition benefit in this case. <u>Id</u>. ¶ 4. Moreover, the Commissioner's determination that health insurance was not an "other advantage" was consistent with twenty years of established, and unappealed, departmental case law. <u>Id</u>. ¶ 18; see also <u>Pelissier v. Hannaford Bros.</u>, No. 26-11WC (Sept. 11, 2009), http://labor.vermont.gov/ wordpress/wp-content/uploads//PelissierDecision.pdf [https://perma.cc/Q4RW-BQEL] (citing a series of decisions dating back to 1990 in which the Commissioner rejected argument that value of health insurance should be included in wage calculation). A decision to the contrary would have upset long-settled expectations and actuarial calculations with potentially a substantial impact on the workers' compensation system. <u>Lydy</u>, 2013 VT 44, ¶ 18.

¶ 14. Plus, the prevalence of health insurance as an employment benefit across sectors and through most of the labor market lent particular support to the notion that if the Legislature had intended to include this widely provided benefit as part of wages, it would not have relied on the catch-all "other advantages," but would have expressly included health insurance in the definition of wages. See <u>id</u>. ¶ 11 (explaining that "because the Legislature has not amended the definition [of wages] to include employer-paid health insurance after it developed into a customary benefit, it is prudent to conclude that such a benefit was not intended to be part of an employee's average weekly wage").

¶ 15. Finally, the Court's analysis in <u>Lydy</u> relied in part on a U.S. Supreme Court decision that an employer's contributions to a union trust fund that supported life insurance, health insurance, retirement benefits, and career training for employees, were not wages under the Longshore and Harbor Workers' Compensation Act—a statute with a similar, but not identical, definition of wages to Vermont's workers' compensation statute. See <u>id</u>. ¶¶ 13-16 (discussing <u>Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs</u>, 461 U.S. 624 (1983)). In <u>Lydy</u>, this Court explained that one reason the Supreme Court concluded that employer's payments into the union trust fund did not constitute a "similar advantage" under the federal

6

workers' compensation law was that was that there was no way to value the benefit actually <u>received by the employee</u> deriving from the employer's contributions to that trust fund. Lydy, 2013 VT 44, ¶ 13 (citing Morrison-Knudsen, 461 U.S. at 631). This Court analogized the health insurance benefit to the employer's contribution to the union trust fund in Morrison-Knudsen, and concluded that the value of the health insurance coverage actually received by the employee was likewise speculative. Id. ¶ 14.

¶ 16. The same cannot be said for the value of free tuition benefits. The undisputed record reflects that claimant herself received the free tuition benefit, and that the value to the employee of the benefit is readily ascertainable. Employer's policies specifically note that employer is responsible for tracking the benefit to the employee and reporting the imputed income on the employee's W-2 to the extent that it exceeds $5250 per calendar year.[4] Wholly independent of any workers' compensation claim, the record reflects that there is an established methodology for determining not the employer's costs—which were all that was known in Morrison-Knudsen— but the benefit to the employees. Moreover, the courses available to claimant are offered to Champlain College students more broadly at a set price. The "market value" of the courses, and the associated credits, is readily discernible in this case. For all of these reasons, our holding in Lydy does not compel a particular outcome in this case, and we must evaluate the Commissioner's determination in this case on its own merits.

¶ 17. The Commissioner's analysis is consistent with the plain language of the statute. See In re Porter, 2012 VT 97, ¶ 10, 192 Vt. 601, 70 A.3d 915 ("We first look to the plain language of the statute. If the meaning is clear, we enforce the statute according to its terms without resort to statutory construction." (citation omitted)). The Legislature's inclusion of broad language

---

[4] Employer is correct that in concluding that the free tuition benefits were readily subject to valuation the Commissioner looked to a section of employer's tuition-benefit policy that does not apply in this case. However, as noted above, the text of the section that does apply in this case also reinforces that the tuition benefit can be readily valued.

including "other advantages" an employee receives from the employer suggests a legislative recognition that the non-monetary benefits that may be part of "wages" take a variety of forms, and are not limited to board, lodging and fuel. See Trombley v. Bellows Falls, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) ("[W]e presume that language is inserted in a statute advisedly. Thus, we do not construe the statute in a way that renders a significant part of it pure surplusage." (citation omitted) (quotation omitted)). We have previously recognized that "wages" as defined in the workers' compensation statute include "benefits other than cash." Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d 795, 797 (1964) (equating "wages" and "earnings," and noting that earnings can consist of "material objects or benefits other than cash"); see also 2 A. Larson & L. Larson, Larson's Workers' Compensation Law § 93.01(2)(a) (2012) ("In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee." (emphasis added)). The benefit at issue here—free tuition, leading to college or graduate level credits and perhaps a degree—is clearly an "advantage" of considerable economic value and, as noted above, its value can be estimated in money.

¶ 18. Moreover, claimant received the benefit as "remuneration." "To remunerate is to 'pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.' " Lydy, 2013 VT 44, ¶ 12 (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). In contrast to the benefit at issue in Morrison-Knudsen, on which this Court relied in Lydy, the benefit at issue here was provided directly to claimant, and it benefited her directly and quantifiably. It was part of her compensation paid in consideration of her work for employer.

¶ 19. The Commissioner's determination is also consistent with the purpose of the workers' compensation laws, which provide benefits to injured workers, including benefits

8

designed to protect against an injured worker's loss of earning capacity, while shielding employers from tort law damages, including non-economic damages. See id. ¶¶ 24-28 (Robinson, J., dissenting). The record is undisputed that free tuition was a substantial economic benefit to claimant and was one of the reasons she chose to work for employer. A worker who makes $20 per hour and receives free college tuition and a worker who makes $20 per hour and has to pay for college tuition out of pocket have very different earnings and are situated differently from an economic perspective. To the extent that the workers' compensation laws are designed to mitigate the economic losses sustained by injured workers, consideration of the value of the free tuition benefit in the wage calculation makes sense. Far from upsetting the workers' compensation laws' "delicate balance" between the interests of employers and employees, the Commissioner's approach serves the purpose of mitigating the injured worker's economic loss while protecting the employer against liability for indeterminate, non-economic losses.

¶ 20. The Commissioner's conclusion is also consistent with the Department's own approach to other non-monetary employment benefits. In Lyons v. American Flatbread, the Commissioner considered whether the value of massages provided by the employer as an employee benefit were included in wages. No. 36-03WC (Aug. 22, 2003), http://labor.vermont.gov/wordpress/wp-content/uploads//S-18824LyonsAll.pdf [https://perma.cc/7W3D-ESCS]. The Commissioner acknowledged its prior decision that health insurance is not an "other benefit" included within the definition of "wages," but concluded that the massages were. Id. at 9. In contrast to the health insurance benefit, the Commissioner reasoned, the massages "were actually received, had actual monetary value, and the employee actually benefited from that value." Id. Similarly, in Gaboric v. Stratton Mountain, the Commissioner considered whether the value of a free ski pass provided to an employee should be considered in the wage calculation. No. 12-04WC (April 26, 2004), http://labor.vermont.gov/wordpress/wp-content/uploads//S-08346-T-18904Gaboric.pdf [https://perma.cc/2VMW-6J24]. The Commissioner distinguished health

9

insurance benefits, stating that the ski pass was a major reason why the employee (or the claimant) worked at the ski area, was a significant part of his compensation, and was an "advantage" that could be readily valued. Id. at 15. In both Lyons and Gaboric, the Commissioner emphasized the unique features of and caselaw concerning health insurance benefits that support the conclusion that health insurance benefits are not "other advantages" within the definition of wages. But in both cases, the Commissioner held that where the non-health-insurance benefits at issue had actual monetary value and were actually received by the employee, they fell within the broad "other advantages" language.

¶ 21. In advocating that this substantial and quantifiable component of compensation should not be included in the calculation of wages, the dissents offer new legal tests that effectively write the "other advantages" language out of the statute. They both suggest that benefits are only "other advantages" if expressly negotiated for in lieu of wages, and one argues that the benefits may only be considered part of compensation if they are "critical to protecting the employee's basic health and survival." Post, ¶ 32. Both arguments are flawed.

¶ 22. The argument that the employment benefit in this case is not part of wages because it is not offered in lieu of wages, and therefore employees receive the same pay whether or not they avail themselves of the benefit, rests on flawed legal and empirical assumptions.

¶ 23. The legal problem is that the language, purpose, and history of the workers' compensation statute do not support the asserted rule. Nothing in the statute purports to require evidence of an express wage-benefit trade-off before including the "other advantage." In fact, the benefits expressly listed alongside "other advantages"—"board, lodging, [and] fuel"—may be provided by employers without an express wage trade-off. 21 V.S.A § 601(13). Even if a worker's acceptance of board and lodging has no impact on that worker's paycheck, the statute includes those benefits as part of "wages." Nothing in the statute suggests that the benefits are only part of wages if they result in reduced take-home pay. Insofar as "other advantages" should be understood

in light of the expressly listed benefits, the canons of statutory construction do not support the dissents' proposals of a special limitation applicable only to "other advantages."

¶ 24.     Nor does the purpose of the workers' compensation law support creating such a rule. One of the purposes of the workers' compensation law is to protect injured workers against short-term wage loss, and long-term lost earning capacity. See Bishop v. Town of Barre, 140 Vt. 564, 572, 442 A.2d 50, 53 (1982) ("The claimant correctly assigns protection against wage loss as one of the Act's purposes."). Even in the case of permanent disability benefits, which are awarded on the basis of schedules rather than individual future wage loss, we have explained that the touchstone is lost earning capacity and that the permanent disability benefit seeks to address that through conclusively proved schedules rather than relying on specific proof of an individual's actual wage-loss experience  Id. at 572-73, 442 A.2d at 53-54 (quoting 2 A. Larson, Workmen's Compensation Law § 58.11, at 10-173 to 10-174 (1981)). To promote this goal, the Commissioner in this case asked whether the employment benefit is significant, provides true value to the worker, and is determinable. These are the right questions because they get at what the workers' compensation statute is trying to accomplish: restoring earnings or earning capacity. A worker who earns $500 per week, and a worker who earns $500 per week and takes advantage of free tuition to take courses and earn college credits, do not stand in the same shoes with respect to the earnings they derive from their work any more than a worker who earns $500 per week and a worker who earns $1000 per week. In both cases, the goal of the workers' compensation statute is advanced by reflecting the differences in the respective workers' effective earnings. Not doing so would result in a greater uncompensated loss for the worker for whom free tuition was a significant portion of compensation than for the similarly situated worker whose take-home pay is the same but who does not receive the additional significant and determinable value from the employer.

¶ 25. And finally, the application of Vermont's workers' compensation statute for decades does not support the dissents' broad exclusion of employer-provided benefits from the scope of "other advantages." See, e.g., Lyons, No. 36-03WC, slip op. at 9 (employer-provided massages are "other advantage" within definition of wages); Gaboric v. Stratton Mountain, No. 12-04WC, slip op. at 15 (free ski pass provided to employee is "other advantage.").

¶ 26. The empirical problem with the dissents' argument is that it rests on an assumption that people, like claimant here, agree to accept a job and a level of pay for employers like Champlain College without regard to the availability of free tuition. The benefit is a perk that they may happen to stumble into, but is not part of a cash-wage/benefit tradeoff that informs the decision to accept employment on those terms. The dissents cite no empirical evidence to support this claim, and it flies in the face of common sense. One of the reasons the Commissioner's focus on the significance of the benefit, and whether claimant has actually derived true value from the benefit, makes sense is that an affirmative answer to both of these questions strongly supports an inference that the benefit—in this case, tuition—is part of the employee's cash-wage/benefit tradeoff calculus. And, it stands to reason that where an employer is able to offer a benefit such as free tuition that is valuable to many workers and prospective workers, the employer is better positioned to maintain at- or below-market cash wages. Our opinion does not rest on this assumption—it is no more supported than the contrary assumption made by the dissent. But it does highlight the problems with a legal rule that rests on an evaluation of the extent to which the availability of the benefit and wages are related.

¶ 27. Likewise, the suggestion that "other advantages" should include only those benefits that are "critical to protecting the employee's basic health and survival" is inconsistent with the nature and purpose of those laws. The workers' compensation law reflects a trade-off between management and labor: injured workers forfeit their common-law right to sue employers for negligence and the tort damages associated with those claims, but are entitled to a remedy for work

12

injuries independent of fault; for their part, employers are shielded from liability for tort damages and instead face a limited and determinate liability. See 21 V.S.A. § 622 (explaining rights and remedies granted by provision of chapter are exclusive to "all other rights and remedies of the employee"); In re Chatham Woods Holdings, LLC, 2008 VT 70, ¶ 9, 184 Vt. 163, 955 A.2d 1183. The result of this trade-off is an insurance system, not a social welfare program. Although it may reinforce part of the social safety net, it is not itself a safety-net program. Individuals with high pre-injury earnings may be entitled to very substantial benefits—far greater than could be justified as necessary to their basic health and survival. The current maximum weekly benefit for an injured worker out of work on temporary total disability benefits is $1,281— translating to annualized earnings of over $65,000—tax free. See Vt. Dep't of Labor, Minimum & Maximum Comp. Rates: Annual Change, http://labor.vermont.gov/wordpress/wp-content/uploads/historicalrates.pdf [https://perma.cc/6GWQ-BETB]; see also 21 V.S.A. § 601(18) (defining "maximum weekly compensation" to be 150% of the state average wage). The notion that "other advantages" should be limited to benefits essential to subsistence is out of synch with the broader workers' compensation scheme.

¶ 28. Given the above considerations, we conclude that the Commissioner's determination was not unreasonable and is entitled to our deference.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 29. **SKOGLUND, J., dissenting.** I believe that the majority opinion is inconsistent with the purpose of the workers' compensation law and dissent. I agree with my brother Eaton's dissent in this matter, which argues a fringe benefit of free college tuition cannot be considered

13

remuneration pursuant to the Workers' Compensation Act, but write separately to argue that consideration of such fringe benefits in determining wages violates the premise and construction of the Workers' Compensation Act.

¶ 30. The purpose of the Act is to compensate for the loss of earning power as a result of a work injury, irrespective of the question of negligence; not to compensate for the loss of fringe benefits. Tuition-free course credits may be one advantage to working at Champlain College, but they are not provided in lieu of wages and, more significantly, they are not necessities of life that the injured worker would need during a period of disability. Unlike the in-kind components of a worker's lost earning capacity such as board, housing, and fuel, tuition-free course credits don't assist an injured worker who cannot earn their wages and should not be viewed as a form of wages to determine income replacement benefits for purposes of the Act.

¶ 31. Workers' compensation laws were designed to provide income, as well as medical and other benefits such as the vocational rehabilitation specified in some statutes, to workers injured during performance of their duties. See, e.g., 21 V.S.A. § 641. Though developments have confused that basic goal, with some states calculating payments by including fringe benefits that were not identified or considered when the law was passed, the majority of jurisdictions judicially or legislatively exclude fringe benefits. See, e.g., 33 U.S.C. § 902(13) ("The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to . . . training . . . ."). For example, while Vermont has decided that employer contributions to health insurance plans are not intended to be part of an employee's average weekly wage, Lydy v. Trustaff, Inc., 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150, Washington state interpreted its statute to include health insurance benefits in the calculation of wages. See Cockle v. Dep't of Labor & Indus., 16 P.3d 583, 594 (Wash. 2001).

¶ 32. In most cases, such disparities can be viewed as differences in statutory authorizations or requirements of contractual employment. In this case, the governing statute does

14

not authorize inclusion and there is no contract of employment that mandates inclusion. I suggest the appropriate discussion should focus on whether the benefit is provided in lieu of salary and is critical to protecting the employee's basic health and survival, a position that would honor the intent of workers' compensation laws.

¶ 33. In Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, the U.S. Supreme Court held that employer contributions to union trust funds for health and welfare, pensions, and training were not "wages" for purposes of computing compensation benefits. 461 U.S. 624, 637 (1983). The question presented to the Court required the Court to interpret the term "wages" in the Longshore and Harbor Workers' Compensation Act (LHWCA), which was enacted in 1927 in response to decisions of the Court limiting the authority of the states to apply their workers' compensation laws to injured maritime workers. Id. at 626; 33 U.S.C. § 902(13) (defining wages). It was patterned after existing state workers' compensation laws. Morrison-Knudsen Constr. Co., 461 U.S. at 640 (Marshall, J., dissenting). The definition of "wages" incorporated in the LHWCA "was lifted almost verbatim from the New York statute." Id.

¶ 34. When Congress used New York's statutory language, the recognized aim of the New York workers' compensation scheme was to compensate for "the loss of earning power incurred in the common enterprise, irrespective of the question of negligence." N.Y. Central R.R. v. White, 243 U.S. 188, 204, 193 (1917) ("Compensation under the act is not regulated by the measure of damages applied in negligence suits, but, in addition to providing surgical, or other like treatment, it is based solely on loss of earning power . . . ."). Thus, the LHWCA, like the New York law, focused on an employee's loss of earning capacity as a result of an occupational injury. Id. at 204.

¶ 35. At the time of Morrison-Knudsen, § 902(13) of the LHWCA defined "wages" for the purpose of computing compensation benefits as meaning "the money rate at which the service

rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer." 461 U.S. at 629. Looking at the plain language of the statute, the U.S. Supreme Court in Morrison-Knudsen first held that the value of the trust funds was not easily converted into a cash equivalent and that the value could not be measured by an employee's expectation interest for that interest is at best speculative. 461 U.S. at 630-31.

¶ 36. Then the Supreme Court looked to the legislative history of the LHWCA and concluded that history provided "abundant indication that Congress did not intend to include employer contributions to benefit plans within the concept of 'wages' [in the LHWCA]." Id. at 632. The Court noted that "employer-funded fringe benefits were virtually unknown" in 1927 when the LHWCA was enacted and opined that, notwithstanding amendments and a "substantial revision in 1972, there was no evidence in the legislative history indicating that Congress seriously considered the possibility that fringe benefits should be taken into account in determining compensation under the [LHWCA]." Id.

¶ 37. The U. S. Supreme Court recognized that "the [LHWCA] was not a simple remedial statute intended for the benefit of the workers." Id. at 636. "Rather, [the LHWCA] was designed to strike a balance between the concerns of the workers . . . and their employers." Id. "Employers relinquished their defenses to tort actions in exchange for limited and predictable liability [while] [e]mployees accept[ed] the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." Id. The Court held that "reinterpretation of the term 'wages' would significantly alter the balance achieved by Congress [in the Act]." Id. In addition, acknowledging that employers calculate their compensation costs on the basis of their cash payroll, the Supreme Court held that the shift in the relative value of take-home pay versus fringe benefits dramatically altered the cost factors upon which employers and their insurers [rely]

16

in ordering their affairs. Id. "If these reasonable expectations are to be altered, that is a task for Congress." Id.

¶ 38. The respondent in Morrison-Knudsen argued that the incentive to trade salary for benefits should not be diluted by failing to consider the value of the benefits in determining "wages." Id. at 635. The trade-off described in Morrison-Knudsen is not present in this case—there was no trade-off of free tuition in exchange for less salary. The Supreme Court's rejection of the argument, however, supports the position of this dissent. The Court wrote, "[A] comprehensive statute such as this Act is not to be judicially expanded because of recent trends." Id. at 635 (quotation omitted).

¶ 39. In Lydy, the Commissioner concluded that employer-provided health insurance premiums were not part of an employee's wages and therefore were not part of the claimant's average weekly wage computation. 2013 VT 44, ¶ 3. In rejecting the inclusion of these benefits in the average weekly wage, the Commissioner held that this would "dramatically impact the delicate balance that the workers' compensation act seeks to maintain between employers and employees." Id. (quotation omitted). Finally, she concluded that the interpretation "was not appropriate for alteration by administrative fiat and that any such change was better left for the Legislature." Id. Exactly.

¶ 40. In Lydy, this Court noted that health insurance, as it exists today, did not develop until the late 1920s and held that, because the Legislature did not amend the definition of "wages" "to include employer-paid health insurance after it developed into a customary benefit, it is prudent to conclude that such a benefit was not intended to be part of an employee's average weekly wage." Id. ¶ 11. We further held that the claimant's argument conflated employers' costs with employees' remuneration and noted that the U.S. Supreme Court rejected this approach in Morrison-Knudsen. Id. ¶ 13.

¶ 41.    In 2013, we found the Supreme Court's rationale in Morrison-Knudsen persuasive. I do not know why it is rejected in this case.  The majority states that this Court's decision in Lydy found that the value of the health insurance coverage actually received by the employee was speculative as was the benefit to the employee from the employer's contributions to the trust fund in Morrison-Knudsen.  Ante, ¶ 15.  This is not accurate.  In Lydy we held "the employer's contribution for health insurance, though determinable, does not accurately reflect the employee's labors or compensation as defined through wages."  Id. ¶ 14 (emphasis added).  The same is true of free tuition—it does not reflect, in any way, the employee's labors or compensation as defined through wages.

¶ 42.    As we noted in Lydy, because our workers' compensation statute differs from those in other states, looking to other jurisdictions for authority is useless.  However, the rationales used in other states can be illuminating.

¶ 43.    Massachusetts law specifically states "such fringe benefits as health insurance plans, pensions, child care, or education and training programs provided by the employers shall not be included in employee earnings for the purpose of calculating average weekly wages."  Mass. Gen. Laws ch. 152, § 1(1).  Massachusetts courts have reasoned that some fringe benefits are to be included in the calculation as they "bear a close analogy to wages paid by the employer."  In re Borofsky, 582 N.E.2d 538, 539 (Mass. 1991) (quotation omitted).  Sales commissions, tip income, and room and board have been included in the calculation.  In re Powers, 176 N.E. 621, 622 (Mass. 1931).  And, in James Roberts, Central Heating & Cooling, American Mutual Insurance, the Court held that a company car was provided to employee "in lieu of an additional wage of $2 per hour," and should be included in the wage calculation.  9 Mass. Workers' Comp. Rep. 431, 432 (1995).  Thus, the general rule in Massachusetts is that if a fringe benefit is considered an explicit, express, or direct wage substitute, it may be included in the calculation of wages.

18

¶ 44. Here the opportunity to collect free tuition credits does not bear a close analogy to wages. Claimant did nothing to earn the opportunity for free tuition credits. The value of same is not similar to sales commissions or the use of a company car provided in lieu of additional wages. If the workers' compensation law is to be expanded so dramatically, are we to include free parking spaces or access to an in-house exercise facility in the calculation of wages?

¶ 45. Apparently, because the benefit at issue here—free tuition—"is clearly an 'advantage' of considerable economic value" and "can be estimated in money," the majority would add that value of the credits to her salary to determine the employee's wage. Ante, ¶ 17. However, any such reinterpretation of the term "wages" would significantly alter the balance achieved by the Legislature in promulgating the Act. The resulting shift will alter the cost factors upon which employers and their insurers rely. I agree with the approach of the U.S. Supreme Court expressed in Morrison-Knudsen, that "[i]f these reasonable expectations are to be altered, that is a task for [the Legislature]." Id. at 636.

¶ 46. The purpose of the workers' compensation law is to provide a remedy for employees that is "both expeditious and independent of proof of fault" as well as a remedy for employers that is limited and determinate. Kittell v. Vt. Weatherboard, Inc., 138 Vt. 439, 441, 417 A.2d 795, 792 (1980). We cannot overlook the fact that the rights of employers as well as the rights of employees are safeguarded by the Act's provisions. See also Quinn v. Pate 124 Vt. 121, 124 (1964).

¶ 47. The ramifications of the majority's decision will extend beyond this case with a likely increase in cost to employers for workers' compensation coverage and to employers who self-insure. Including in the calculation of weekly wage any fringe benefits that are not paid in lieu of wages or are not an explicit substitute for wages will create a morass that will overwhelm employers and the workers' compensation system.

19

¶ 48. The phrase "board, lodging, fuel and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration" should be read to mean readily identifiable and reasonably calculable in-kind components of a worker's lost-earning capacity at the time of injury that are critical to protecting workers' basic health and survival. 21 V.S.A. § 601(13). The Legislature provided that these categories should count as "wages" because they are necessities of life, without which the injured worker cannot survive a period of even temporary disability. Contributions to retirement, life insurance, golf green fees, or free tuition are not necessities of life without which an injured worker cannot survive.

¶ 49. I dissent.

¶ 50. I am authorized to state that Justice Eaton joins this dissent.

_____
Associate Justice

¶ 51. **EATON, J., dissenting.** The tuition benefit at issue in this case is not provided to claimant as part of her remuneration and should not be included in the calculation of claimant's average weekly wage. The majority's decision conflicts with the plain language of the Workers' Compensation Act and with controlling case law, and represents a vast judicial expansion of the definition of wages. For these reasons, I dissent.

¶ 52. An injured worker's disability benefit is based on the worker's average weekly wages. 21 V.S.A. § 650. Wages are defined by the Act to include "bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration." 21 V.S.A. § 601(13). At issue is whether the value of tuition-free course credits received by claimant are "other advantages" offered as a part of claimant's remuneration.

¶ 53. This question is plainly controlled by our recent decision in Lydy v. Trustaff, Inc., in which we held that employer-provided health insurance benefits were not "other advantages"

20

received as part of the claimant's remuneration and should not be included in calculating the average weekly wage. 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150. We reasoned in Lydy that expanding the definition of "other advantages" to include employer health insurance "ignores the remainder of the statutory phrase, which limits 'other advantages' to those 'which the employee receives from the employer as a part of his or her remuneration.' " Id. ¶ 12. "To remunerate is 'to pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.' " Id. (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). The definition of wages in 21 V.S.A. § 601(13) "implies a payment actually received by an employee—it more closely refers to the actual earnings of the worker." Id. By contrast, "[a]n employee is not paid for her work with health insurance; rather, health insurance is a fringe benefit of employment." Id.

¶ 54. The same reasoning applies to the tuition benefit at issue here. Claimant was not paid for her work with free classes. The tuition benefit was provided independently of claimant's take-home pay. There is no evidence that she received more money in her paycheck if she did not take a class, or that her overall salary was lower than it would have been due to the availability of the benefit. She continued to use the free tuition benefit through the fall of 2014, months after she stopped work due to her injury. The tuition benefit was not tied to claimant's job performance, title, or hours worked. It was a voluntary perk available to her and to any other employee. In fact, spouses and dependents of employees were also eligible for this tuition benefit, even if they were not employees themselves. The free classes provided to claimant were not part of her taxable income.[5] These factors indicate that the tuition benefit provided to claimant did not compensate her for services provided and thus was not a part of her remuneration.

---

[5] The Internal Revenue Code excludes up to $5250 in employer-provided education assistance from the gross income of an employee. 26 U.S.C. § 127(a)(2); see also 32 V.S.A. § 5823 (using federal adjusted gross income as basis for Vermont income tax). Claimant took classes

21

¶ 55. The Appellate Division of the New York Supreme Court reached a similar conclusion in Blackwelder v. Faith Heritage School, 811 N.Y.S.2d 225 (App. Div. 2006). In Blackwelder, an injured maintenance and custodial worker who had received free tuition for his three children from his employer sought to include the value of that tuition in the calculation of his average weekly wage. Id. at 225. The court affirmed the decision of New York's workers' compensation board that the tuition remission was not part of the worker's wages, relying on the following facts: the worker was paid at an hourly rate for a forty-hour week at a rate similar to his predecessor; his pay was unaffected by whether his children attended the school; the tuition remission was applied retroactively to the beginning of the school year in which the worker began his employment and continued after he could no longer work due to his injury; the employer considered the tuition benefit to be a fringe benefit similar to health benefits; and the tuition remission was not a taxable benefit according to the Internal Revenue Service. Id. For these reasons, the court concluded that the tuition remission was an additional benefit not given as remuneration for services provided by claimant, and therefore not "wages" within the meaning of New York's workers' compensation law. Id. at 226. The facts of this case are similar and lead to the same conclusion: "other advantages" does not include the tuition benefit provided to claimant by employer.

¶ 56. Furthermore, "when construing an enactment with a series of defining terms, we will apply the rule of ejusdem generis, and the latter general terms will be construed to include only those things similar in character to those specifically defined." Vt. Baptist Convention v. Burlington Zoning Bd., 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (quotation omitted). Thus, we must read "other advantages" in light of the character of board, lodging, and fuel, the defined terms that immediately precede the phrase. See id. Tuition benefits are nothing like these core, nonfringe

worth a total of $1797 in 2012, $4273 in 2013, and $4515 in 2014; therefore, these amounts were not taxable income to her.

22

items.  There is no evidence that the tuition benefit was essential to allow claimant to do her job.  Indeed, the graduate tuition benefit offered here permitted an employee to take classes that were completely unrelated to his or her work for employer—as claimant did in this case.

¶ 57.  The conclusion that claimant's wages did not include the tuition benefit is also supported by the history of the Act, which was enacted in 1915 as part of a nationwide movement to provide remedies for injured industrial workers.  In Lydy, we noted that most of these laws "compensated employees for the core, nonfringe benefits of housing, food, and fuel."  2013 VT 44, ¶ 8.  Since the Act's passage, the statutory definition of wages has remained virtually unchanged, with the exception of adding the term "bonuses."  Id. ¶ 10.  Because the health insurance system was in not in place in 1915 and employer-provided health insurance was not a customary benefit at that time, we concluded that such a benefit was not intended to be included in the definition of wages under the Act.  Id. ¶ 11.

¶ 58.  Like employer-provided health insurance, tuition-free course credits are outside the scope of what the Legislature would have considered to be "wages" in 1915.  Tuition benefits are the type of noncore, fringe benefits—like employer-paid life insurance or discounted gym memberships—that became common later in the twentieth century as employers sought to attract workers.  See id. ¶ 11; Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, 461 U.S. 624, 632 (1983) (stating that "employer-funded fringe benefits were virtually unknown" when similar federal workers' compensation act was passed in 1927).  While these types of fringe benefits are perhaps not as pervasive as employer-provided health insurance, see ante, ¶ 14, they have become increasingly common over the past century.  There are any number of things employers may do to attract workers, from serving better food in their cafeteria to providing discounts at health clubs.  But access to those fringe benefits does not mean they are remuneration for the work done by the employee.  They aren't.  In this case, claimant would have received exactly the same pay for the work she did for employer whether she took any courses or not.

23

Despite the prevalence of fringe benefits, the Legislature has not amended the language of the Act to include such additional benefits in the definition of wages, even though it made other amendments to 21 V.S.A. § 601 after our decision in Lydy. See 2013, No. 96 (Adj. Sess.), § 136. This strongly indicates that the value of such benefits were not intended to be factored into determining a worker's average weekly wage. See Dubaniewicz v. Houman, 2006 VT 99, ¶ 13, 180 Vt. 367, 910 A.2d 897 (finding that lack of legislative response to judicial interpretation of statute "at least suggests legislative acquiescence" to Court's interpretation).

¶ 59. The majority claims that Lydy is not controlling because we affirmed the Commissioner's decision in that case, and following Lydy here would require us to reverse the decision below. Ante, ¶ 13. While it is true that we typically defer to the Commissioner's interpretation of the Act, "we will not affirm an unjust interpretation." Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (citing Clodgo v. Rentavision, Inc., 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997)). In the past, we have not hesitated to reverse workers' compensation decisions that incorrectly interpreted the law. See, e.g., Cyr v. McDermott's, Inc., 2010 VT 19, ¶ 14, 187 Vt. 392, 996 A.2d 709; Morin, 2005 VT 15, ¶ 4; Clodgo, 166 Vt. at 551, 701 A.2d at 1046. Lydy controlled this matter and the Commissioner should have followed it, particularly since unlike in Lydy, the question presented by claimant was a matter of first impression for the Commissioner. See Lydy, 2013 VT 44, ¶ 3 n.2 (noting twenty-year-old line of decisions in which Commissioner had consistently denied requests to incorporate employer-paid health insurance premiums into wage calculation). In this case there was no previous line of administrative decisions finding that a tuition benefit counted as "other advantages." A decision to the contrary would not upset the settled expectations of employees, employers, and insurers, as it would have in Lydy.

¶ 60. The majority also attempts to distinguish Lydy on the ground that the benefit at issue in this case is "readily ascertainable." Ante, ¶ 16. While the dollar value of the courses

24

actually taken by an employee may be capable of subsequent estimation in a given case, the problem with this approach is that it is unfair to injured workers who are unable to take advantage of the tuition benefit. Consider an employee who is equally situated with claimant in terms of pay and position, but who has family obligations that prevent her from taking graduate level courses from employer. Under the majority's reasoning, if that person is injured, she will receive less in compensation than claimant merely because claimant was able to take the free classes.

¶ 61. Average weekly wages should be based upon the wages received for the work done, not factors that depend on vicissitudes outside of the workplace that allow one worker to utilize fringe benefits while another cannot. The majority's position ignores the fact that the tuition benefit, like health insurance, is offered to every employee regardless of whether the employee takes advantage of it. Each employee can choose to take no courses, some noncredit courses, or a full degree program. Likewise, an employee's spouse or child may use the benefit. The employer offers the courses either way. Just as with health insurance, an employee's interest in the free classes is at best speculative. See Lydy, 2013 VT 44, ¶ 14. There may be employees who are prevented from taking courses due to their life circumstances, such as a lack of child care during times when the courses are offered. It is unfair to them that they should receive less in average weekly wage should they become injured than the person whose life circumstances allow them to take the courses.

¶ 62. Furthermore, the statute requires that "other advantages" be capable of being estimated in money in part so that employers and their workers' compensation insurers have a way to anticipate potential liabilities. See 21 V.S.A. § 601(13). The unpredictability of the tuition benefit's value to any particular employee makes it difficult to estimate for workers' compensation insurance purposes. Treating the benefit as part of wages therefore could vastly alter employer's exposure under the Act.

¶ 63.     As we noted in <u>Lydy</u>, the workers' compensation law "serves the dual purposes of providing an expeditious remedy for injured employees independent of proof of fault, and of offering employers a liability which is limited and determinate." <u>Lydy</u>, 2013 VT 44, ¶ 19. The majority's decision opens the door to claims for compensation for fringe benefits of all kinds and upsets the "delicate balancing" achieved by the Act. <u>Id</u>. We rightly declined to upset that balance by expanding the definition of "other advantages" to include employer-provided health benefits in <u>Lydy</u>. Instead, we held that such a decision was better left to the Legislature, where the various affected constituencies could debate the matter. <u>Id</u>. For the same reason, I would decline to expand the definition of an average weekly wage to include the tuition benefits at issue here.

¶ 64.     I am authorized to state that Justice Skoglund joins this dissent.

_____
Associate Justice

26